

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

FILED
JUL 1 9 2024
U.S. DISTRICT COURT
FLINT, MICHIGAN

| | | |
|---|---|---|
| KARTER LANDON | : | Case: 2:24-cv-11876 |
| | : | Judge: Murphy, Stephen J. |
| Plaintiff | : | MJ: Stafford, Elizabeth A. |
| | : | Filed: 07-19-2024 |
| | : | CMP Landon v. City of Flint, et al (tt) |
| v. | : | |
| | : | |
| CITY OF FLINT, MICHIGAN | : | **VERIFIED COMPLAINT FOR** |
| | : | **DECLARATORY JUDGMENT,** |
| SHELDON NEELEY | : | **VARIOUS MONETARY** |
| In his personal and professional | : | **DAMAGES, AND PRELIMINARY** |
| capacities | : | **AND PERMANENT** |
| | : | **INJUNCTIVE RELIEF** |
| EMILY DOERR | : | |
| In her personal and professional | : | **EXHIBIT 1: FLINT CITY** |
| capacities | : | **ENFORCEMENT LETTERS** |
| | : | |
| MICHAEL REITER | : | **EXHIBIT 2: CITATION** |
| In his personal and professional | : | |
| capacities | : | **EXHIBIT 3: FLINT CITY RENTAL** |
| | : | **INSPECTION CODE** |
| AMANDA TRUJILLO | : | |
| In her personal and professional | : | **EXHIBIT 4: CHECKLIST** |
| capacities | : | |
| | : | **EXHIBIT 5,6: WATER BILLS** |
| PHILLIP MOORE | : | |
| In his personal and professional | : | **EXHIBIT 7:  CITATION 2** |
| capacities | : | |
| | : | |
| WILLIAM KIM | : | |
| In his personal and professional | : | |
| capacities | : | |
| | : | |
| Jointly and Severally | : | |

1

Plaintiff KARTER LANDON, for his Verified Complaint against Defendant CITY OF FLINT, MICHIGAN, et-al, hereby alleges again as follows:

## INTRODUCTION

1.     This is an action brought pursuant to 42 U.S.C. §1983 for declaratory judgment, temporary restraining order, preliminary and permanent injunction, actual and nominal damages, restitution, and other relief arising from the unconstitutional policies, practices, and threats of Defendant City of Flint's policies, practices, and conduct threaten Plaintiff with irreparable harm to his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The harm may only be remedied by a ruling from this Court, as this court did so in the previous identical case between these parties, case # 16-11061.

2.     Defendant has again impeded and threatened to further unconstitutionally impede Plaintiff in his right to be free from unlimited warrantless searches without probable cause by maintaining, implementing and enforcing vague policies that (i) threaten Plaintiff with subjection to unduly broad warrantless searches of his houses and business property without probable cause; (ii) violates Plaintiff's reasonable expectation of privacy; and (iii) retaliate against Plaintiff for exercising his Fourth Amendment rights by either (a) pressing criminal charges against him, (b) pressing

civil charges against him, or (c) depriving him of his property rights, including but not limited to the right to use his rental property by renting it to others.

3.      As a result of the policies, practices, and customs of the Defendant, as well as certain conduct by Defendant, Plaintiff will again suffer irreparable harm unless the Defendant is immediately enjoined from restricting his Fourth Amendment rights in this manner.

4.      For the reasons above, Plaintiff seeks, amongst other things, declaratory judgment and injunctive relief determining that the offending provisions of the City's Comprehensive Rental Inspection Code, codified in "Section 24-4" of The City of Flint "Comprehensive Rental Inspection Code" (hereinafter "The Code," or "The Program"), are unconstitutional on its face and as applied to him, and further, that the Code is insufficient to support the issuance of an "administrative" warrant.

## PARTIES

5.      The Plaintiff is a rental property owner in the City of Flint.

6.      Plaintiff owns rental homes within the City of Flint, Michigan, each of which is subject to the Comprehensive Rental Inspection Code and its inspection requirements.

7.      In December of 2023, Plaintiff was informed by Flint City Treasurer Amanda Trujillo that Flint will refuse water service to anyone renting Plaintiff's homes

unless Plaintiff submitted to warrantless searches of his homes..

8.     Plaintiff has never voluntarily and knowingly consented to Comprehensive Rental Inspection Code inspections.

9.     Attempted inspection of each parcel of Plaintiff's rental property has been coerced through the implied threat of loss of property or liberty; and Plaintiff continues to be coerced into providing involuntary consent to such inspections. Defendant denies tenants in Plaintiff's rental properties any water, therefore denying Plaintiff use of his rental properties and the ability to rent them out to families in need of said housing.  They must remain vacant.

10.     Defendant City of Flint, Michigan is a municipal corporation located within Genesee County, Michigan; it is created and existing under and by virtue of the laws of the State of Michigan. In fulfilling its duties, the City acts by and through its council and administrative members, including:

     a.     Mayor Sheldon Neeley

     b.     Emily Doerr, head of Development

     c.     Amanda Trujillo, Treasurer / Head of Water Department

     d.     Michael Reiter, chief building inspector

     e.     Phillip Moore, chief financial officer

     f.     William Kim, City of Flint chief attorney and prior attorney on the previous case in this matter between these parties, case# 16-11061.

11.     Defendant implements the Comprehensive Rental Inspection Code and/or enforces the unconstitutional restrictions accomplished through the City's policies and practices (as described herein).

13.     Defendant undertook specific action so as to deprive and/or violate the constitutional rights of the Plaintiff.

14.     Defendant further threatened Plaintiff with loss of property and criminal and civil charges as a consequence to any attempt to assert a constitutional right to be free from unreasonable searches of his houses.

15.     All actions by the Defendant described herein were undertaken under color of state law which caused the deprivation of Plaintiff' rights protected by the United States Constitution.

16.     All acts herein of the Defendant City of Flint, its officers, agents, servants, employees or persons acting at its behest or direction, were done and are continuing to be done under the color or pretense of state law.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C.
§ 1331, as this action arises under the Fourth, Fifth, and Fourteenth Amendments
to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is
brought to prevent imminent deprivations, under color of state law, of rights,
privileges and immunities secured by the United States Constitution; under 28
U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief
under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of
action for the protection of civil and constitutional rights; under 28 U.S.C. §
2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary
and injunctive relief and damages; and under 42 U.S.C. § 1988 to grant Plaintiff
prayer for relief regarding the recovery of costs, including damages and restitution.
Venue is proper within this judicial district and division pursuant to 28 U.S.C. §
1391(b) and any Local Rule which Plaintiff preserves to argue, as (i) Defendant is
situated within this judicial district and division, (ii) the Defendant transacts
business within this District, and (iii) the conduct complained of occurred within
this District.

## FACTUAL ALLEGATIONS

***The City of Flint Comprehensive Rental Inspection Code: Prohibition on Renting Homes Without Consenting to a Warrantless Search***

18.     Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

19.     The City of Flint, Michigan enacted its current Comprehensive Rental Inspection Code in 2020.

20.     The Code took effect immediately; however, Flint randomly decided various enforcement methods, finally resulting in deprivation of water in December of 2023.

21.     The City of Flint Rental Inspection Program mandates that, "The owner of any rental dwelling shall obtain a Certificate of Compliance prior to allowing any unit to be occupied by a tenant. Occupying or allowing occupancy without the required Certificate shall be deemed a municipal civil infraction punishable pursuant to Flint City ordinance sec. 1-29." Section 24-4.3.1(a)

22.     "The enforcing agency shall inspect all registered rental dwellings every three years." Sec. 24-4.3.3(a)

23.     The code clarifies that, "A Certificate of Compliance shall be issued ***only***

after inspection by the Enforcing Agency." Sec. 24-4.3.1(b) emphasis added. And said inspection can only occur after All fees have been paid.

24.     Further, the Code authorizes city officials to conduct a *full* inspection of a rental home, curtilage, and outbuildings in response to a specific and narrow complaint unrelated to the entire home, or when a city official discovers a violation during the execution of his or her duties.

25.     During these inspections, city officials search for evidence that can result in criminal charges and/or condemnation of the property and / or civil infraction tickets / fines being issued and levied.

26.     Evidence adduced through inspection can further result in "suspension" of the city permit to rent the property.

27.     The Code authorizing the inspections does not specify a city official's scope.

28.     As to the scope of the rental inspections, the Code simply alludes to "periodic inspections," and suggests that agents may search for any violation of the provisions of the code. To the extent that the scope of the search is implied by the Code, a broad array of housing regulations applies.

29.     City agents maintain and apply a Checklist for Certificate of Compliance

30.     The checklist enumerates 100 separate items as disparate as "shrubs," "address numbers," "splash blocks," "missing putty," and "non-conforming bedroom," as well as documenting room measurements and ceiling height.

31.   Through its labels, the Checklist makes clear that a thorough search is to be made of the Exterior Premises, Interior, Kitchen, Hallways, Laundry, Basement, Bedrooms, Bathrooms, and "other."

32.   The Code further intrudes on the tenants' right of privacy.

33.   The City charges fees for issuing and renewing rental dwelling permits.

34.   Rental Dwelling Code fees are minimally $225 per unit every three years, not counting initial registration fees of $250, reinspection fees of $120, and non-compliance fees of $450, water fee of $75 and usage of minimum $70.

35.   Flint demands inspections regardless of whether a property is or is not vacant, and penalizes Plaintiff regardless of whether he refuses entry absent a warrant, or even if his tenant has refused entry without a warrant.

36.   Flint refuses issuing certificates of inspection / completion unless all claimed outstanding fees are paid, regardless of the property owner's dispute of owing said fees, which includes exorbitant water bills placed into Plaintiff's name without due process and against authority of law.

37.   Flint refuses a prospective tenant water service unless a certificate of inspection / completion has been issued. As well, lack of water service is construed as a violation preventing a certificate of inspection from issuing, which in circle prevents the tenant from obtaining water service.

38.   Even though a house may pass inspection, if it has been three years since the

initial inspection was paid for, Flint will then again require another inspection fee be paid, based on the time since the last fee was paid, not based on the most recent inspection.

39.     Flint has gone so far as to attempt to order Plaintiff to provide access to his occupied homes where the tenant has refused access.

40.     The sole purpose of Flint's Comprehensive Rental Inspection Program is to generate revenue for the City.

### PLAINTIFF STATES

41.     Plaintiff maintains standing to bring this action because if he does not consent to a warrantless search of his property he is faced with (1) criminal charges and civil fines; and/or (2) loss of all rental income related to his Flint properties.

42.     Plaintiff intends to refuse all efforts by the City to (1) inspect his properties; and (2) collect fees from him to fund the inspection of his properties and others.

43.     As a consequence of this abstention, Plaintiff is in imminent risk of facing criminal charges, civil penalties, and/or loss of his property rights in response to this assertion of his Fourth Amendment rights.  Plaintiff's sole source of income is rental income from his properties.

44.     Plaintiff maintains no conditions at any of his properties that would (1) give

rise to the need for an emergency entry into those properties; or (2) vest the City with probable cause to believe that Plaintiff maintains an interior code violation or other nuisance.

45.    Plaintiff currently maintains no substantive interior code violations within his rental properties.

46.    Plaintiff has never been prosecuted or fined by the City of Flint for maintaining interior code violations or other nuisances;

47.    However, Flint has attempted to fine Plaintiff for refusal to grant Flint access absent a warrant to occupied property at 119 E. Tobias.

48.    Flint also refused for days to turn water on for Plaintiff's long-time tenant at 119 E. Tobias after turning said water off on the tenant and his family, demanding a warrantless inspection occur before it would consider turning water back on.

49.    This coercion tactic ultimately failed and Flint agreed it would turn the tenant's water back on.

50     Plaintiff is contractually and statutorily obligated to provide his tenants with a fit and habitable property, free from any nuisances and/or other dangerous conditions, and understands and abides by these terms.

51.    Plaintiff is not currently in violation or has ever been found to be in violation of his contractual or statutory obligations.

52.    Plaintiff is, by all accounts, a model property owner and landlord, and has

been for almost 27 years.  Plaintiff is also a licensed real estate broker and property

manager within the State of Michigan, and has been for about 23 years.

53.    Defendant has contacted Plaintiff and insists on performing, within the next

thirty to sixty days, further warrantless searches within some of Plaintiff properties.


## DECLARATORY JUDGMENT AND INJUNCTION

### (28 U.S.C. § 2201, *et seq.*)


54.    Plaintiff hereby incorporates by reference the allegations in the foregoing

paragraphs as if set forth fully herein.

55.    An actual controversy has arisen and now exists between Plaintiff and

Defendant concerning Plaintiff's rights under the United States Constitution. A

judicial declaration is necessary and appropriate at this time.

56..   A state actor is liable under 42 U.S.C. § 1983 if it took "action pursuant to

official policy of some nature [that] caused a constitutional tort." *Monell v. Dep't of

Soc. Servs.*, 436 U.S. 658, 691, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).

57.    "[Governmental] liability may be imposed for a single decision by

[government] policy makers under appropriate circumstances." *Id.* at 480.

58.    A state actor cannot constitutionally condition the receipt of a benefit, such as

a rental permit, liquor license, or an entertainment permit, on an agreement to

refrain from exercising one's constitutional rights, particularly one's right to be free from unlimited warrantless searches of private property without probable cause. Id., citing *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972) ("For at least a quarter- century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests— especially, his interest in freedom of speech."); *Keyishian v. Board of Regents,* 385 U.S. 589, 606, 87 S.Ct. 675, 685, 17 L.Ed.2d 629 (1967) (quoting *Sherbert v. Verner,* 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963)) ("It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or privilege.").

59.    Plaintiff desires once again a judicial determination of his rights against Defendant as they pertain to Plaintiff's right to be free from unlawful searches, coerced surrender of property rights and/or privileges, and vague licensing requirements.

60.    In order to prevent violation of Plaintiff' constitutional rights by Defendant, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and FED. R. CIV. P. 57, declaring unconstitutional, facially and as-

applied here, all relevant portions of the City of Flint's Comprehensive Rental Inspection Code, as well as Defendant' enforcement policies, practices, and actions related to the Code.

61.     Furthermore, pursuant to 28 U.S.C. § 2202 and FED. R. CIV. P. 65, it is appropriate and hereby requested that this Court issue preliminary and permanent injunctions prohibiting the Defendant from enforcing its search policies and all policies, practices, and conduct reliant on and related to the Code's search policies, including but not limited to the Code's search fees and permitting process, to the extent they are unconstitutional, in order to prevent the ongoing violation of Plaintiff' constitutional rights. It is also appropriate that this Court issue preliminary and permanent injunctions prohibiting Defendant from abusing its position as sole provider of water by refusing water service to tenants who reside in Plaintiff's properties if Plaintiff or tenant chooses to exercise his or her Constitutional Rights as argued above, in order to coerce allowance of warrantless searches.

COUNT I

**VIOLATION OF RIGHT TO DUE PROCESS AND FREEDOM FROM**

**UNCONSTITUTIOTIONAL SEARCHES PURSUANT TO THE FOURTH,**

**FIFTH, AND FOURTEENTH AMENDMENTS**

**TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)**

62.   Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restarted herein.

***Violation of the Unconstitutional Conditions Doctrine***

63.   The Supreme Court's "Unconstitutional Conditions" Doctrine arises from the Due Process guarantees articulated in the Fifth and Fourteenth Amendments to the United States Constitution.

64.   The Supreme Court of the United States has confirmed in a variety of contexts that "government may not deny a benefit to a person because he exercises a constitutional right." This includes water, which the government provides. *Regan v. Taxation With Representation of Wash.,* 461 U.S. 540, 545 (1983). See also, *e.g., Rumsfeld v. Forum  for Academic and Institutional Rights, Inc.,* 547 U.S. 47, 59–60 (2006); *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 78, 110 S.Ct. 2729 (1990).  In *Perry v. Sindermann,* 408 U.S. 593 (1972), for example, a public

college would violate a professor's freedom of speech if it declined to renew his contract because he was an outspoken critic of the college's administration. And in *Memorial Hospital v. Maricopa County,* 415 U.S. 250 (1974), a county impermissibly burdened the right to travel by extending healthcare benefits only to those indigent sick who had been residents of the county for at least one year.

65.    The Supreme Court has further explained that "[t]hose cases reflect an overarching principle, known as the unconstitutional conditions doctrine, that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."

*Koontz v St. Johns River Water Management Dist.,* 133 S.Ct. 2586, at 2594 (2013).

66.    The Supreme Court has consistently applied the Unconstitutional Conditions Doctrine within the context of land use permitting.

Id. (explaining that "land-use permit applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take."), citing *Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 547, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005); Dolan, 512 U.S., at 385, 114 S.Ct. 2309* invoking "the well-settled doctrine of 'unconstitutional conditions'

67.    "[R]egardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions

doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise him." *Koontz,*supra.

a)     "The Unconstitutional Conditions doctrine is a check on the coercive powers government, and as such finds its origins as a species of substantive due process. See Kathleen M. Sullivan, Unconstitutional Conditions, 102 HARV. L. REV. 1413, 1415 & n.3 (1989).

b)     A government may not grant a benefit on the condition that the beneficiary surrender a constitutional right, even if the government may withhold the benefit altogether. *Amelkin v. McClure*, 330 F.3d 822, 827-28 (6th Cir. 2003); see also Perry v. Sindermann, 408 U.S. 593, 597 (1972).

c)     A government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests. *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 434 (6th Cir. 2005).

68.    Further, the right to rent property in Michigan, like the right to exclude others from private property, is not merely a "government benefit," but rather, is an extension of one's private property rights - - rights recognized by the Michigan Constitution and Michigan Supreme Court as "fundamental."

69.    Defendant imminently threatens to pressure Plaintiff into forfeiting his Fourth Amendment rights by, in response to the exercise of those rights, (1) withholding rental certificates needed to rent homes in Flint and/or (2) prosecuting Plaintiff for

criminal violations or civil penalties, should he rent his homes without a rental certificate and/or (3) denying Plaintiff's tenants water service.

70. Defendant burdens Plaintiff's Fourth Amendment rights by operation of law, through maintaining and enforcing the Comprehensive Rental Inspection Code.

### *Violation of the Fourth Amendment's Search and Seizure Clause*

71. The Fourth Amendment provides in relevant part that the "right of the people to be secure in his persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

72. The Fourth Amendment indicates with some precision the places and things encompassed by its protections: persons, **houses**, papers, and effects.

73. The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When "Government obtains information by physically intruding" on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment" has "undoubtedly occurred." *United States v. Jones,* 132 S.Ct. 945, 950–951, n. 3 (2012).

74. The Supreme Court has declared warrantless searches "*per se* unreasonable." *Mincey v. Arizona,* 437 U.S. 385, 390 (1978) (internal quotation marks omitted); see *Groh v. Ramirez,* 540 U.S. 551, 559 (2004).

75.    Since *Camara v. Mun. Court of City and County of San Francisco* and

*See v. City of Seattle*, each decided in 1967, building code search statutes have been

held unconstitutional unless they require a search warrant supported by

administrative probable cause.    387 U.S. 523 (1967).

76.    *Camara* held that administrative inspections are significant intrusions on

Fourth Amendment rights for which warrants generally are required.

77.    *Camara* further held that warrantless searches of residential rental property

by municipal inspectors violated the Fourth Amendment protection against

unreasonable searches and seizures.    Id., at 528.

78.    In *See v. City of Seattle*, (Id., at 541.) the Supreme Court held that, like the

search of a private home, the search of a business is presumptively unreasonable if

conducted without a warrant, as a businessman's Fourth Amendment guarantees are

"placed in jeopardy if the decision to enter

and inspect for violation of regulatory laws can be made and enforced by the

inspector in the field without official authority evidenced by a warrant,"

Id., at 543.    as, "[i]t is untenable that the ban on warrantless searches was not

intended to shield places of business as well as of residence."

        *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312 (1978).

79.    In *Hodgins v. U.S. Department of Agriculture,* the Sixth Circuit Court of

Appeals held "for warrantless searches to be justifiable under a regulatory scheme,

the object of the search must be something that can be quickly hidden, moved,

disguised, or altered beyond recognition, so that only a surprise inspection could be

expected to catch the violations. On the other hand, if a regulation is similar to a

building code (as in *See v. Seattle*), where violations will be harder to conceal, the

need for surprise will be less pressing, and warrantless searches will more likely be

unconstitutional."        238 F.3d 421 (2000).

80.    An exception to the warrant requirement has been recognized for searches of

pervasively or closely regulated industries.

     *See New York v. Burger,* 482 U.S. 691 (1987) (junkyard industry); *Donovan*

*v. Dewey,* 452 U.S. 594 (1981) (coal mining);*United States v. Biswell,* 406 U.S.

311 (1972) (firearms); *Colonnade Catering Corp. v. United States,* 397 U.S. 72

(1970) (liquor); *see also United States v. Acklen,* 690 F.2d 70 (6th Cir.1982)

(pharmacies); *Marshall v. Nolichuckey Sand Co.,* 606 F.2d 693 (6th Cir.1979) (sand

and gravel industry), *cert. denied,* 446 U.S. 908 (1980).

81.    Plaintiff is not doing business in a "pervasively or closely regulated industry."

82.    The Sixth Circuit Court of Appeals has concluded that even "sexually

oriented businesses" such as "adult cabarets" do not qualify as "pervasively or

closely regulated businesses."

83.    Even if Plaintiff were operating in such an industry, in *New York v. Burger,*

the Supreme Court enunciated three criteria that must be met before any such

warrantless inspection or search is constitutionally acceptable: "First, there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made. Second, the warrantless inspections must be 'necessary to further [the] regulatory scheme.' * * * Finally, 'the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant.'"

84.     The Comprehensive Rental Inspection Code contains a warrant provision which Defendant ignores, and issuance of the right to rent one's property is still conditioned on a homeowner submitting to a warrantless inspection, regardless of refusing same. Defendant has never sought a warrant to gain entry to any of Plaintiff's homes. Plaintiff has insisted Defendant do this, which fell on deaf ears.

85.     A rental home owner's rental property is (1) a "house," as specified in the Fourth Amendment; and (2) at least equivalent to the "commercial property" held to be entitled to Fourth Amendment protection.

86.     The Code's inspection requirement, as a physical intrusion into a home to collect information that can later be used in a criminal prosecution, is a "search," as contemplated by the Fourth Amendment.

87.     The warrantless or otherwise inspection of rental homes located within the City of Flint is not "necessary to further the regulatory scheme"   (See *McLaughlin v. Kings Island, Div. of Taft Broadcasting Co.* 849 F.2d 990 (6th Cir. 1988).)

here: the City could operate a complaint-driven scheme, one that relies upon

probable cause, or one that enlists property owners' use of private building

inspectors. (Plaintiff must use Flint inspectors and pay their rates, whatever Flint

chooses to charge)

88.     The Code searches violates Plaintiff' right to be free from unreasonable

searches by (1) coercing property owners' consent to such searches, and (2)

violating tenants' reasonable expectation of privacy, and (3) violating Plaintiff's

reasonable expectation of privacy in homes he possesses.


### *Due Process Violation of the Fourth Amendment's Warrant Clause*

89.     The second clause of the Fourth Amendment affirms "no Warrants shall

issue, but upon probable cause, supported by Oath or affirmation, and particularly

describing the place to be searched, and the persons or things to be seized."

90.     The Fourth Amendment to the United States Constitution guarantees Plaintiff

the right to refuse warrantless government inspections of his home unless the

government first secures a valid administrative search warrant issued by a neutral

party authorized to issue an administrative search warrant, or unless an emergency

exists.

91.     The Defendant's Code contains a warrant provision that provides that if

permission to enter said property is denied, the enforcing agency "shall seek an

administrative search warrant…" Sec. 24-4.3.3(c) … however, Defendant ignores this provision, and as well, penalizes the owner who has refused a warrantless inspection by making it a civil infraction to have a tenant in said home, and further be denying any occupant therein water.

## COUNT II

### TORTIOUS INTERFERENCE

92.    Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

93.    A section 1983 suit gives Plaintiff the ability to recover damages resulting from the violation of Plaintiff's rights.

94.    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…"   42 U.S.C. Section 1983.

95.    At the time of the violation of Plaintiff's rights, it was clearly established law that the actions of Defendants were Unconstitutional.

96.    Not only was all caselaw and statutory authority well documented by this

time, the declarations that Flint's conduct and ordinance violated the Constitution

had already been adjudicated.  In fact, the same attorney who represented Flint

previously is the head City attorney, Mr. William Kim, and he advised the

Defendants to act in this way.

97.     The Supreme Court noted in *City of Monterey v. Del Monte Dunes at

Monterey, Ltd.*, 526 U.S. 687, 709 (1999), that "there can be no doubt that claims

brought pursuant to § 1983 sound in tort."

98.     In order to be individually liable under § 1983, an individual must personally

participate in an alleged rights deprivation.  *Avalos v. Baca*, 596 F.3d 583, 587 (9th

Cir. 2010).

99.     All individually-named defendants participated personally in the acts which

violated Plaintiff's rights.

        a.      Amanda Trujillo is the head of the water department and admitted to

refusing water service to Plaintiff unless he submitted himself to warrantless

searches, despite Plaintiff demanding a warrant.  She stated Phillip Moore

instructed her to do so.

        b.      Michael Reiter flagged all of Plaintiff's homes to indicate to Amanda

Trujillo which homes she should deny water service to.

        c.      Emily Doerr is head of the planning and Zoning Department, under

which department Michael Reiter and BSI work.  She implemented the policy of

24

denying water service to Plaintiff where he refused any warrantless search.

     d.     Sheldon Neeley is mayor of the City and responsible for the administration thereof. His office informed Plaintiff directly that if he refused warrantless searches, he would be denied water until he gave in.

     e.     Phillip Moore is the chief financial officer. He instructed Amanda Trujillo to refuse water service to houses despite Plaintiff objecting to warrantless searches of those homes. He also informed Plaintiff that Plaintiff cannot rent his houses unless he allows Flint agents into his home, regardless of warrant.

     f.     All named individuals have been contacted by Plaintiff numerous times to discuss the matter, and only Amanda Trujillo and Phillip Moore have personally responded, affirming to Plaintiff that he would be denied water until he allowed warrantless searches.

100.  Amanda Trujillo admitted that this policy was identical in every way to the policy implemented be the City from before the first suit was filed and that they were acting the same was as was determined to be Unconstitutional before.

101.  Tortious interference is a common law tort allowing a claim for damages when a defendant interferes with the Plaintiff's contractual or business relationships.

102.  Plaintiff has a contractual / business relationship with all of his tenants, with whom he has a written lease or otherwise.

     a.     Defendants interfered with that relationship be denying a tenant at 119 E. Tobias water.

     b.     Defendants interfered with that relationship by tagging Plaintiff's home at 3622 Western Rd. with a citation demanding a court appearance or admission of responsibility for disallowing a warrantless inspection.  See exhibit 7.

104.   Defendants interfere with relationships between Plaintiff and new or prospective tenants by disallowing water at Plaintiff's houses such that he cannot fulfill his contractual obligation with current or prospective tenants who do or wish to rent houses from Plaintiff wherein Plaintiff must assure the houses are suitable for habitability by having water service.

105.   Plaintiff is damaged by loss of rents from all houses where water service is or will be refused.

106.   Plaintiff is further damaged by having to maintain utilities and lawns at these houses while they sit vacant.

107.   Plaintiff is further damaged from damages done by others who damage Plaintiff's vacant houses because they must sit vacant.

## COUNT III

### TAKING / CONDEMNATION

108.   Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

109.   A constructive, or regulatory, taking occurs when the government restricts the owner's rights so much that the government action becomes a physical taking.

110.   Governmental action effects a taking if the action denies an owner economically viable use of his land, *see Penn Central Transp. Co. v. New York City*, 438 U. S. 104, 438 U. S. 138, n. 36 (1978).

111.   See also *Nollan* v. *California Coastal Comm'n*, 483 U.S. 825, 837, and *Dolan v. City of Tigard* (93-518), 512 U.S. 687 (1994).

112.   Plaintiff is damaged by loss of rents from all houses where water service is or will be refused.

113.   Plaintiff is further damaged by having to maintain utilities and lawns at these houses while they sit vacant.

114.   Plaintiff is further damaged from damages done by others who damage Plaintiff's vacant houses because they must sit vacant.

## COUNT IV

### LOSS OF RENTS AND OTHER DAMAGES

115.   Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

116.   By virtue of violating Plaintiff's Constitutional Rights, Plaintiff has incurred and is incurring damages as follows:

117.   Plaintiff is damaged by loss of rents from all houses where water service is or will be refused.

118.   Plaintiff is further damaged by having to maintain utilities and mow lawns at these houses while they sit vacant.

119.   Plaintiff is further damaged from damages done by others because Plaintiff's houses must sit vacant, including risk of squatters.


## COUNT V

### NOMINAL AND PUNITIVE DAMAGES

120.   Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

121.   One function of a section 1983 suit is to deter government actions that violate citizens' Constitutional rights.

122.   Clearly Defendant Flint has not been deterred from violating Plaintiff's rights

from the earlier suit, and something must be done to prevent future violations.

123.   Plaintiff requests nominal damages for violating his Constitutional rights,

even if no other compensatory damages are awarded.

124.   Plaintiff further requests Punitive damages against Defendants for their

continued violation of Plaintiff's Constitutional rights, despite all of them being

fully aware of the caselaw and this court's previous declarations.

125.   In Fletcher v Tomlinson, case # 16-4399 (8th. Cir. 2018), $400,000 in

punitive damages was awarded against a St. Louis Police officer for violating

Plaintiff's Constitutional rights. "Punitive damages may be awarded under 42

U.S.C. § 1983 when the defendant's conduct is shown to be motivated by evil

motive or intent, or when it involves reckless or callous indifference to the federally

protected rights of others." See also *Smith v. Wade*, 103 S. Ct. 1625 (1983), punitive

damages available through section 1983 where "reckless disregard" is shown.

126.   Defendants' motives are to generate revenue and at the expense of depriving

Plaintiff of his Constitutional rights, with no regard whatsoever for said rights, or

for the livelihood or future welfare of Plaintiff.

127.   Defendants show that they are willing to repeat this behavior in order to

generate revenue with no consideration for previous findings of this or any court of

law.

128.   Defendants cannot be allowed to act with impunity going forward and should incur sufficient punitive damages to dissuade future transgressions.

## COUNT VI

## LACK OF THRESHOLD FOR PROBABLE CAUSE

129.   Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

130.   An administrative warrant should not issue except for upon a showing of probable cause.

131.   Defendant's ordinance lacks any mention of probable cause, let alone defining the threshold needed to be met for probable cause.

132.   An independent judge or magistrate cannot simply rubberstamp warrants. There must be a showing of probable cause.

133.   In a 2023 ruling from Iowa Sioux County District Court, case# 03841 / EQCV029175, Judge Jeffrey Neary found:

"First, the city needs reason to believe a health or safety violation is in place before it inspects a property."     Probable Cause

"Second, if the city wants an inspection, checking for things such as working smoke detectors, it has to notify the resident beforehand and give them time to file an objection or ask for search limitations."   Precompliance Review

134.   Flint's ordinance lacks all of this.

30

## COUNT VII

## NO DUE PROCESS

135.   Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

136.   Flint operates with no due process afforded to landlords.

137.   Flint determines that "late fees" of $450 must be paid, even though there is no logical rational for assessing a late fee where an inspection can be refused absent a warrant, and demands said fee even if a warrant was demanded.

138.   Flint assesses illegal and sometimes fake water bills to Plaintiff.  See attached exhibits 5 and 6.

139.   Flint demands water be on for a unit to pass any inspection.  Flint further demands disputed water bills be paid before it will turn water on for an inspection, even if Plaintiff has disputed said bills, two currently which are fake (Ex 5,6).

140.   Flint demands Plaintiff pay Flint $75 to turn water on, pay a water bill, and then pay $75 to have water turned off, all under the pretext of a needed inspection.

141.   Gas and electric must also be on, forcing Plaintiff to do business with another entity, Consumers Energy, and to pay those bills.

142.   Flint agents will cite absolutely anything, without authority of law, so that they may deem a premises not certifiable, such as a pile of sticks on the ground. Flint creates its own requirements, ignoring the International Property Maintenance

Code (IPMC) which it adopted as its guideline for inspections.

143.   Flint ignores appeals lawfully filed under the IPMC, instead demanding $300

to file such an appeal, and enforcing Flint's findings contrary to IPMC rules which

state that during the pendency of an appeal, Flint's findings cannot be enforced.

144.   There is no impartial entity to appeal findings to.

145.   Inspections are scheduled months out, causing further financial damages and

risk, and continuing an illegal taking of each property.

146.   Flint, therefor, enforces refusal of water, denial of the ability to rent premises,

assessment of fines, and findings of dishonest and abusive agents without any due

process afforded to landlords.

147.   Flint should be required to follow due process, to file claims of ordinance

violations in court, and to prove said claims.  Instead, Flint is its own judge and jury

in all matters, until it is sued.

148.   Further, when Flint "inspects" a property, if a tenant is present, and refuses

entry, Flint does an exterior inspection, and bills for a full inspection.  Should Flint

successfully gain entry for a second inspection, it will bill the landlord for a needed

third inspection, at no fault of the landlord, and will create a cycle of inspection fees

over which the landlord has no control.

   a.   Also, any issues caused by the tenant result in billed inspection fees to

the landlord, who has no remedy at law except for termination and eviction of the

tenant, while Flint can make any number of inspections during this time, at
landlord's expense.

## COUNT VIII

## UNREASONABLENESS OF ENFORCEMENT

## TAKING / CONDEMNATION AND NO DUE PROCESS RESULTS

149.   Plaintiff incorporates by reference all of the foregoing paragraphs as if fully
restated herein.

150.   Flint inspectors routinely cite everything and anything they find, whether
they are actual code violations or not, and as claimed in Count VI, there is hardly
any appeal available to landlords.

      a.     Houses which pass a Federal Section 8 inspection are known to fail a
City of Flint inspection.

      b.     Houses which require a second inspection, will then require a third
inspection when additional claims of violations are newly found, resulting in added
fees to Landlords.

151.   The IPMC sets forth what is considered habitable versus uninhabitable.

152.   In general, a house should be deemed habitable unless a "substantial" number
of serious code violations exist which threaten the health and safety of inhabitants.

153.   Flint's own code allows for what Flint calls a "partial" certificate of

compliance.

154.  Flint never issues partial certificates of compliance.

155.  Flint agents will only issue a certificate of compliance if they feel, at their sole discretion, that there are absolutely no "violations" of any code, or of their individual perception of the code, even if they are purposefully citing issues that are not violations of the code.

156.  A house should be habitable, unless it is deemed uninhabitable, through condemnation.

157.  A habitable house should be allowed to be inhabited, including by providing water.

158.  Flint actually causes houses to be uninhabitable, and interferes with Plaintiff's performance of the covenant of habitability, by refusing water service.

159.  Flint should be required to issue a citation, and afford a landlord due process, if it claims a code violation exists that must be fixed.  It should not simply refuse Plaintiff the ability to rent his homes on an agent's discretionary assessment of what is clearly not a habitability issue; for example, a pile of sticks outside on the ground, a cracked switch cover, a missing piece of insulation or trim, etc.

## A NEED FOR THE ENTIRE ORDINANCE TO BE STRUCK

160. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

161. In addition to what is mentioned above, Flint's ordinance suggests a landlord may not collect rent, or evict for non-payment of rent.

162. Because of this, district court judges can and sometimes do glean that a landlord cannot evict for nonpayment of rent, and cannot sue for rent owing or collect same.

    a.    An unfortunate result is that landlords must terminate tenancies, which means tenants cannot seek any available assistance for paying rent within the scope of these evictions. This hurts everyone.

163. Also, tenant attorneys may argue that current law prohibits their clients from having to pay rent, although they resided in Plaintiff's homes for any relevant period of time. This leads to unjust enrichment for such a tenant at the expense of plaintiff.

## A NEED FOR PERMANENT INJUNCTIVE RELIEF

164. Plaintiff incorporates by reference all of the foregoing paragraphs as if fully restated herein.

165. Permanent injunction is needed because Flint has demonstrated that it has no respect for the authority of this court or the law.

166.   Flint has demonstrated that it will continue its illegal and Unconstitutional behavior despite the findings of this court.

167.   Flint takes advantage of the time it takes to process litigation at the federal court by violating Plaintiff's Constitutional rights and causing him great damage while litigation proceeds.

168.   Flint should be required to get the court's approval before initiating any future ordinances similar to the one in question here.


## CONCLUSION

169    Criminal and civil punishment is an irreparable harm.

170.   Loss of constitutionally-protected Fourth, Fifth, and Fourteenth Amendment rights and constitutionally-protected property rights causes irreparable harm.

171.   Enforcement of the constitutional rights specified herein is in the public interest.

172.   Defendants' enforcement of the Comprehensive Rental Inspection Code violates the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by imposing an unconstitutional condition upon Plaintiff's lawful exercise of his property rights.

173.   The Code is unconstitutional as applied to Plaintiff who operates rental homes and has not created any dangerous conditions or other emergencies on his

properties.

174.   The Code's requirement that a property be searched before it can be used is unconstitutional on its face.

175.   The Code's search requirement cannot be severed from the Code's "fees" and "certificating" requirements.

176.   The unconstitutional portions of the Code cannot be severed from the Code's lawful portions.

177.   The Code fails to meet the requirements necessary to obtain a search warrant.

178.   As a proximate result of Defendant' policies and practices described above, Plaintiff faces imminent threat of irreparable injury and will continue to suffer irreparable injury, in that he will be deprived of his rights under the Fourth, Fifth, and Fourteenth Amendment of the Constitution.

179.   In order to prevent further violation of Plaintiff' constitutional rights by Defendant, it is appropriate and proper that once again a declaratory judgment be issued, pursuant to 28 U.S.C. 2201 and Fed. Rule of Civil Procedure 57, declaring the City of Flint's enforcement of the Code against Plaintiff to be unconstitutional.

180.   Pursuant to 28 U.S.C. 2202 and Fed Rule of Civil Procedure 65, it is appropriate and hereby requested that this Court issue a Temporary Restraining Order and preliminary and permanent injunction enjoining the City of Flint, Michigan from enforcing the Code against Plaintiff.

181.   As a direct and proximate result of the Code's mandates and punishments, alongside the threats made by Defendant, Plaintiff's constitutional rights under the Fourth, Fifth, and Fourteenth Amendments have been violated and Plaintiff has suffered injury and damages, insofar as he has been forced to either endure and fund unlawful government searches of his houses, or let his properties sit empty as he has done, at great economic loss and risk to his business, future, and livelihood.

182.   Plaintiff cites among other cases *James Ronald Baker v. City of Portsmouth*, case no. 1:14cv512, with similarly situated Plaintiffs and Defendants.  In that case, Judge Susan J. Dlott granted Plaintiff's motion for summary judgment stating in part as follows:

"In this case, the Court is satisfied that the warrantless inspections impact a substantial privacy interest, as "the sanctity of private dwellings [is] ordinarily afforded the most stringent Fourth Amendment protection." *United States v. Martinez-Fuerte,* 428 U.S. 543, 561 (1976).*Cf California v. Ciraolo,* 476 U.S. 207, 226 (1986)"

"The inspections are also significantly intrusive. As the Supreme Court has noted, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States* v. *United States District Court,* 407 U.S. 297, 313 (1972). *See also Camara,* 387 U.S. at 539 ("administrative searches of the kind at issue here are significant intrusions

upon the interests protected by the Fourth Amendment")."

A copy of said finding / order is attached herein and made part of this complaint.

183.  Also consider Roy Dearmore et all v. City of Garland,

U.S. District Judge Sam Lindsay writing:

"Inspections and searches of unoccupied property would clearly infringe on the property owner's right under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure. In these limited situations, where the property is unoccupied, the protections guaranteed by the Fourth Amendment to the United States Constitution outweigh any interest that the government has in protecting the health, safety or welfare of the public. If it becomes necessary to inspect unoccupied properties, the City could readily, with a modicum of effort, obtain an administrative search warrant to inspect any property that may pose a danger to the public."

"Dearmore has demonstrated a substantial likelihood of success on the merits as to his claim that the Ordinance will violate the Fourth Amendment's protection from unreasonable searches by requiring that the owner of rental property consent in advance to an annual inspection in order to receive a permit, and citing an owner for an offense if he refuses to consent. Dearmore has also demonstrated a substantial threat of immediate and irreparable harm, for which he has no adequate

remedy at law, because in order to receive a permit he must agree to abide by all the provisions of the Ordinance, which includes agreeing in advance to a warrantless inspection. Dearmore also is subject to being fined, or even arrested, for a misdemeanor violation. Each day for which he is not in compliance or violates the Ordinance constitutes a separate offense. Dearmore has further demonstrated that granting a preliminary injunction will subject the City to minimal harm, if any, while protecting him from irreparable harm which could not otherwise be adequately remedied at law. The City, with minimal effort, may amend its ordinance to include the owner's right of refusal of an inspection and include a warrant requirement upon that refusal. The court determines that the effect, if any, on the City's regulatory scheme would be negligible. Finally, Dearmore has demonstrated that a preliminary injunction will not disserve the public interest, as enjoining the enforcement of an unconstitutional provision of the Ordinance promotes rather than disserves the public interest. Enjoining such enforcement ensures that private citizens will not be subject to unconstitutional actions by the City. Moreover, constitutional violations should be enjoined as soon as practicable; otherwise, the Constitution is of little value.

Accordingly, the court grants Plaintiff Roy Dearmore's request for a preliminary injunction as to section 32.09(F) of the Ordinance that requires a person who rents or leases a single-family dwelling to allow an inspection of the rental

property as a condition of issuing a permit, and that criminally penalizes a lessor for refusing to allow an inspection;"

184. Plaintiff also incorporates the prior findings of this court, to wit:

"The overarching principle is that the government cannot coerce people into giving up the Constitutions enumerated rights."

(Plaintiff) "shows that Flint conditions the right to rent one's property on the surrendering of one's right to be free from warrantless searches."

"… the City's amendments to its Rental Inspection code do not remove all reasonable expectations that the alleged violations will recur."

"… the amendments do not require the enforcing agency to obtain a warrant if permission is denied prior to conducting an inspection."

"Moreover, the amendment does not address Plaintiff's claim that property owners, landlords, and tenants are not told that they have the right to refuse warrantless entries, that they are not provided a mechanism for pre-compliance review, and that the City imposes fines and penalties when a warrantless entry is refused."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, and that the Court:

(1)     Grant preliminary injunction, pending the outcome of this case;

(2)     Declare that the provisions of the Comprehensive Rental Inspection Code wholly reliant upon the unconstitutional search, including but not limited to the monetary extraction for inspections and the certificate requirement, violate Plaintiff's Fourth Amendment rights;

(3)     Declare that the Comprehensive Rental Inspection Code is insufficient, without more, to serve as a basis for the City to obtain an administrative warrant;

(4)     Enjoin Defendant from enforcing that portion of its code which declares a property cannot be rented absent a warrantless search;

(5)     Enjoin Defendant from indirectly enforcing the Comprehensive Rental Inspection Code's warrantless search requirement by criminally or civilly prosecuting Plaintiff, stripping him of the right to rent his property, or otherwise;

(6)     Enjoin Defendant from indirectly enforcing the Comprehensive Rental Inspection Code's warrantless search requirement by denying water to tenants at Plaintiff's homes.

(7)     Enjoin Defendant from attempting to seek and obtain a warrant, predicated on the Comprehensive Rental Inspection Code, to search Plaintiff properties; but

instead require Defendant to seek a warrant only where defined probable cause is claimed, and where precompliance review is offered;

(8) Require Defendant petition this court before implementing any similar ordinance in the future to be sure same complies with this court's findings;

(9) Require that any rental inspection ordinance allow only for Defendants to issue citations affording due process to landlords on claims of code violations, instead of affording Flint the sole right to enforce penalties for claimed violations;

(10) Require that any rental inspection ordinance provide for definition of habitability versus perfection; that only houses found uninhabitable from serious health and safety code violations should be condemned;

(11) Enjoin Defendants from requiring Plaintiff do business with any other entity for the purpose of housing inspections, such as Consumers Energy, Flint Water, and independent contractors;

(12) Award compensatory damages to Plaintiff for Defendants refusing to provide water service to his homes, causing loss of income (rent), increased maintenance with mowing and utility bills, any damage to said properties, including dealing with squatters, and other damages incurred;

(13) Award interest from December of 2023 and until judgment is entered, with statutory interest continuing thereafter,

(14) Enjoin Defendant City of Flint from refusing water service to Plaintiff's

tenants to coerce warrantless searches;

(15)  Enjoin Defendant from assessing fines and other penalties without due process;

(16) Pursuant to 42 U.S.C. §1988 and other applicable law, award Plaintiff his costs and expenses incurred in bringing this action;

(17)  Award nominal damages against Defendant and in favor of Plaintiff to compensate Plaintiff for violations of his constitutional rights if no other damages are found;

(18)  Award Punitive damages to Plaintiff in an amount high enough to hopefully dissuade Defendant from trying this yet again, and for violating his Constitutional rights yet again, despite previous rulings of this court,

and

(19)  Grant such other and further relief as the Court deems equitable, just, and proper.

Plaintiff reserves the right to amend this complaint should such issue become known which might relate to said complaint and / or be relevant to the instant case.


Plaintiff requests a trial by Jury.

Dated: 7-19-24

Karter Landon
12140 Francesca Dr.
Grand Blanc MI 48439
810-252-9335,   alandlord@hotmail.com

# EXHIBITS



# CITY OF FLINT *Ex. 1*
## Department of Planning and Development

**Sheldon A. Neeley**
**Mayor**

10/25/2023

LANDON, KARTER R
PO BOX 1234
GRAND BLANC, MI 48480

RE: 2929 WYOMING AVE          Property Parcel# 41-04-102-029

Dear LANDON, KARTER R

A review of our records indicates that the above-referenced property is non-homestead rental dwelling that must be registered pursuant to Flint City Code § 24-4.2 and § 24-4.2.1. Our records also indicate that the above-referenced property is due for a rental inspection pursuant to Flint City Code § 24-4.3.3.

Enclosed is an application for registration and inspection of your rental dwelling. Please complete the application forms and return them to this office, along with payment of fee(s) listed below. If you submit the application and payment in person, the date and time for inspection will be provided at that time. If you submit the application and payment by mail, the date and time for inspection will be mailed to the address on file. Please be sure to provide adequate contact information and update your address if necessary.

Once the inspection has been scheduled, it is your responsibility to ensure that the property is accessible, including the interior of the dwelling, to the inspector(s) at the date and time specified.

**Failure to comply within 30 days of this notice will result in a LATE FEE and possible legal action.**

If you have any questions, you may contact us **between the hours of 9 AM and 3 PM** in person; by phone at (810) 766-7284.

## APPLICABLE FEES:

☒    One-Time Rental Registration Fee ($250.00) non-transferable

☒    Rental Inspection Fee (see fees on enclosed application)

---

City of Flint • 1101 S. Saginaw Street RM S106 • Flint, Michigan  48502
www.cityofflint.com • (810) 766-7284 • Fax: (810) 762-7379

# LANDLORD RENTAL UNIT REGISTRATION

RENTAL LICENSE #                                    CERTIFICATE #

PROPERTY ADDRESS

| | | | |
|---|---|---|---|
| REGISTRATION FEE | LICENSE | $250 | |
| INSPECTION FEES: | SINGLE FAMILY: | $225 | |
| | TWO FAMILY: | $300 | |
| | MULTIPLES -BASE | $105 | COMPLEX NAME: |
| | PER BUILDING (AFTER 1) | $38.00 X | = |
| | 3-4 UNITS | $90 X | = #BLDGS: |
| | 5-50 UNITS | $75 X | = #UNITS: |
| | 51 OR MORE | $45 X | = |
| LATE FEES: | 1-2 FAM | $450 | = |
| | 3-10 UNIT | $600 | = |
| | OVER 10 | $1,000 | = |
| SUSPENDED LICENSE REINSTATEMENT FEE: | | $25 | = |
| ** PER RENTAL CYCLE ** | | | CHECK # |

* THE INSPECTION FEES ONLY INCLUDE UP TO TWO (2) INSPECTIONS *          TOTAL

## INFORMATION

OWNER NAME:

OWNER ADDRESS:

|  | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|
| P O BOX #: | | CITY | STATE | ZIP |

| PRIMARY PHONE | E-MAIL | FAX |
|---|---|---|

DRIVER'S LIC #                                    DATE OF BIRTH

SIGNATURE:                                    DATE:

## INFORMATION

AGENT NAME:

AGENT ADDRESS:

|  | ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|---|
| P O BOX #: | | CITY | STATE | ZIP |

| PRIMARY PHONE | E-MAIL | FAX |
|---|---|---|

DRIVER'S LIC #                                    DATE OF BIRTH

SIGNATURE:                                    DATE:

TENANT NAME:                                    PHONE:

DRIVER'S LIC #:                                    DATE OF BIRTH:

Mailing Address: CITY OF FLINT DEVELOPMENT DIVISION 1101 S SAGINAW ST Rm# S106 FLINT, MI 48502

810 766 7284 : press #2          Make checks payable to: TREASURER CITY OF FLINT          Rev 5/27/22

State of Michigan **21 M C 02880**
Uniform Law Citation

Ex. 2

Name: **Bossman Investments**
Street: **P.O. Box 1234**
City: **Grand Blanc MI 48480**

THE PERSON NAMED ABOVE, in violation of **Chapt 24-4.3.1**
☒ Local Ordinance ☐ State Law ☐ Administrative Rule
AT OR NEAR **110 E. Todios**
WITHIN ☒ CITY ☐ VILLAGE ☐ TOWNSHIP OF **FLINT**
COUNTY OF **GENESEE**

Describe/Remarks: **Allowing occupancy w/o a Certificate of Compliance**

SEE DATE BELOW SEE BACK
Appearance Date on or before **August 11, 2021 at 1:30pm**

In the **67** DISTRICT **5th Div** Court of **CITY OF FLINT**
630 S. SAGINAW, FLINT, MI 48502-1526
(810) 766-8968

**Michael S. Re** 7 21 21
Officer's Name (printed) **Michael S. Re**

COURT COPY

Ex. 3



**ORDINANCE NO._____**

An Ordinance to amend the Flint City Code of Ordinances by amending Chapter 24, Housing; Section 24-4, Adoption - Comprehensive Rental Inspection Code.

IT IS HEREBY ORDAINED BY THE PEOPLE OF THE CITY OF FLINT:

Sec. 1. That Section 24-4 of the Code of the City of Flint shall be amended as follows.

### ARTICLE I. 2012 INTERNATIONAL PROPERTY MAINTENANCE CODE

### § 24-4 ~~ADOPTION~~ COMPREHENSIVE RENTAL INSPECTION CODE.

~~Pursuant to the provisions of MCLA §117.3(k), the 2012 International Property Maintenance Code and any future additions and amendments as published by the International Code Council, Inc., together with City of Flint's Administrative Amendments to the Property Maintenance Code, and the Comprehensive Rental Inspection Code, as are adopted by the City Council from time to time and filed in the office of the City Clerk are hereby adopted, as amended, by reference AND ATTACHED HERETO.~~
The Flint City Council finds that adoption of a comprehensive scheme of rental property inspection in the City of Flint is necessary in order to ensure the health, safety, and welfare of the residents of the City. The Flint City Council also adopts by reference the 2015 International Property Maintenance Code and any future additions or amendments as published by the International Code Council, together with the City of Flint's Administrative Amendments to the Property Maintenance Code, except that in case of any conflict this Comprehensive Rental Inspection Code shall control.

### § 24-4.1 DEFINITIONS

(a) Certificate of Compliance: A written document issued by the Enforcing Agency that denotes that a registered rental dwelling/unit is

---

fully or partially in conformity with this Comprehensive Rental Inspection Code.

(b) Enforcing Agency: The Department of Planning and Development of the City of Flint and/or their assigned designee(s)

(c) Owner: Any person or entity holding a legal or equitable interest in real property and entitled to collect payment from a tenant in return for the tenant's occupancy of that real property.

(d) Rental Dwelling: Any structure containing one or more rental units occupied by a tenant or tenants for any period of time in exchange for monetary remuneration or other benefit.

(e) Rental Unit: A unit within a rental dwelling intended for occupancy by a person other than the owner, a parent of the owner, or a child of the owner, but including hotel/motel units and rooming units.

(f) Tenant: A person residing in a rental dwelling other than the owner, the owner's spouse, the parent of the owner, or a child of the owner.

(g) Violation Notice: A written notification issued by the Enforcing Agency that documents and communicates to the owner or their registered agent violations of this Comprehensive Rental Inspection Code during an inspection conducted at a rental dwelling/unit, for which corrective action is required.

### § 24-4.2 REGISTRATION

The Enforcing Agency shall create and maintain a rental dwellings registry and an owner/agent registry as further described in this section.

### § 24-4.2.1 Owner/Agent Registry.

(a) Every owner of a rental dwelling shall register with the Enforcing Agency and provide, at minimum, the following information in a form acceptable to the Enforcing Agency:

    1. The owner's name and contact information;

2. The address at which the owner can be served with process, if the need should arise;

3. A copy of the owner's and, if applicable, resident agent's driver's license or government-issued identification card; and

4. Any additional information needed to prove of ownership, including, but not limited to, a recorded deed, a recorded land contract and, if applicable, trustee information.

(c) If the owner is not a natural person, or if the owner is not a resident of the State of Michigan, the owner shall designate an agent authorized to accept service of process

(d) Process shall be sufficient if sent by first class mail to the owner/agent's last address of record.

(e) Failure to comply with this section shall be deemed a municipal civil infraction punishable pursuant to Flint City Ordinance §1-19.

### § 24-4.2.2 Rental Dwellings Registry.

(a) All owners shall register their rental dwelling(s) with the Enforcing Agency, and must update the Enforcing Agency within thirty (30) days of any change in the registered information.

(b) Owners shall provide the following information, in a form acceptable to the Enforcing Agency:

  1. The address and permanent parcel number of the rental dwelling.

  2. The number, type, and mailing address of all rental units in the dwelling;

  3. The name, street address, and driver's license or government-issued identification card number of all owner(s) and other information as needed to prove ownership.

(c) Within thirty (30) days of a change in ownership of a rental dwelling, the new owner(s) shall re-register the dwelling.

(d) Failure to comply with this section shall be deemed a municipal civil infraction punishable pursuant to Flint City Ordinance §1-19.

### § 24-4.2.3 Exception to Registrations.

In the event that a property in the City is sold and the seller(s) continue to occupy the premises for a period of not more than sixty (60) days, the purchaser(s) shall not be required to register the property and/or obtain a rental license.

### § 24-4.3 INSPECTIONS AND CERTIFICATION

The Enforcing Agency shall inspect rental dwellings and issue Certificates of Compliance as further described in this section.

### § 24-4.3.1 Certification of Compliance Required, Application, Fee

(a) The owner of any rental dwelling shall obtain a Certificate of Compliance prior to allowing any unit to be occupied by a tenant. Occupying or allowing occupancy without the required Certificate shall be deemed a municipal civil infraction punishable pursuant to Flint City Ordinance §1-19.

(b) A Certificate of Compliance shall be issued only after an inspection by the Enforcing Agency.

(c) Any inspection fees shall be paid when the owner submits an application to the Enforcing Agency for registration and application, in accordance with the Master Fee Schedule.

(d) Issuing Certificate of Full Compliance

  1. A Certificate of Full Compliance shall be issued if the Enforcing Agency determines that there are no violations of this Comprehensive Rental Inspection Code and that the premises are fit for occupancy.

  2. A Certificate of Full Compliance is issued only on the condition that the premises remain safe, healthful, and fit for occupancy.

(e) Issuing Certificate of Partial Compliance

1. If the Enforcing Agency determines that violations of this Comprehensive Rental Inspection Code exist, but that said violations do not constitute a hazard to the health or safety of those who may occupy the premises, the Enforcing Agency may, in its discretion, issue a Certificate of Partial Compliance.

2. The Enforcing Agency shall also order the owner to correct any violations within a specified time. Failure to correct violations within the time specified shall be deemed a municipal civil infraction punishable pursuant to Flint City Ordinance §1-19

3. A Certificate of Partial Compliance shall be valid for sixty (60) days or for such length of time as determined by the Enforcing Agency to be reasonably necessary to correct the violation. The expiration date of a certificate of partial compliance may be extended at the discretion of the Enforcing Agency so long as that the violations do not constitute a hazard to the health or safety of those who may occupy the premises.

4. The Enforcing Agency shall re-inspect the rental dwelling after the owner has corrected any violations. If the Enforcing Agency determines that conditions continue to exist which violate the Comprehensive Rental Inspection Code, the Certificate of Partial Compliance shall be revoked and the rental unit shall be vacated within a time frame set by the Enforcing Agency, not to exceed thirty (30) days. For a multi-unit rental dwelling, the certificate of compliance for the entire building may be revoked if the Enforcing Agency determines that the conditions in any rental unit constitute a threat health and safety of all residents of that building.

5. If upon re-inspection the Enforcing Agency determines that no violations of this Comprehensive Rental Inspection Code continue to exist, a Certificate of Full Compliance shall be issued.

(f) Denial of Certificate of Compliance

1. If the Enforcing Agency determines that violations of this Comprehensive Rental Inspection Code would constitute a hazard to the health or safety of those who may occupy the premises and/or that the number and/or seriousness of the violations are too extensive to issue a Certificate of Partial Compliance, no Certificate of Compliance shall be issued

2. If a Certificate of Compliance is denied, the Enforcing Agency shall notify the owner of all identified violations. Once the owner has corrected the identified violations, the owner must re-apply for a Certificate of Compliance and pay all applicable fees.

3. Denial of a Certificate of Compliance may be appealed to the Building Code Board of Appeals

(g) If property in the City is sold and the seller(s) continue to occupy the premises for a period of not more than sixty (60) days, the purchaser(s) shall not be required to request an inspection and/or obtain a Certificate of Compliance.

(e) The issuance of any Certificate of Compliance does not grant a warranty, express or implied, as to the health, safety and welfare of life and property in conjunction with the property

(f) Each Certificate of Compliance shall expire three years after issuance and may not be extended beyond its expiration date.

(g) Where ownership changes before a valid Certificate of Compliance has expired, the Certificate of Compliance may be transferred to the new owner without an additional inspection being required. A transferred certificate of compliance shall expire on the same date as the previous owner's certificate of compliance.

(h) No inspection for renewal of a Certificate of Compliance shall be conducted more than sixty (60) days prior to the expiration of the previous certificate of compliance.

### § 24-4.3.3 Inspection Procedures.

(a) General. The Enforcing Agency shall inspect all registered rental dwellings every three years. All fees are to be assessed in accordance with this Comprehensive Rental Inspection Code as reflected in the Master Fee Schedule.

(b) Method for Conducting Inspections. Inspections shall be conducted to ensure compliance with this Comprehensive Rental Inspection Code, and may be conducted on one or more of the following bases:

    1. Tri-Annual Basis. All rental dwellings must be inspected by the Enforcing Agency at least once in every three year period.

    2. Area Basis. Where all rental dwellings within a predetermined geographical area will be inspected simultaneously or within a specified period of time.

    3. Complaint Basis. Where a rental property is reported to be in violation of this Comprehensive Rental Inspection Code.

    4. Violation Basis. Where an enforcing agent, while conducting his or her duties, discovers a violation of this Comprehensive Rental Inspection Code; and/or

    5. Recurrent Violation Basis. A rental property with a high incidence of recurrent or uncorrected violations justifies more frequent inspections to ensure compliance with this Comprehensive Rental Inspection Code.

(c) Access to Rental Units: To conduct an inspection, the Enforcing Agency will request permission from the owner and/or tenant to enter any rental dwelling/unit during regular business hours. If permission to enter is denied, the Enforcing Agency shall seek an administrative search warrant from the 67th District Court or another court of competent jurisdiction.

(d) Notice of Violations: If, upon inspection, the premises, or any part thereof, is found in violation of any provision of this Comprehensive Rental Inspection Code, the Enforcing Agency shall notify the owner or registered agent in writing of the existence of the violation.

    1. The notice shall state the date of inspection, the name of the inspector, the nature of the violation, and the time by which the violation must be corrected.

    2. A copy of the notice shall also be sent to the occupant and/or posted on the rental property in a conspicuous place.

(e) The Enforcing Agency shall re-inspect the premises after the time specified to determine whether the violation(s) have been corrected. Failure to correct a violation by the time specified shall be deemed a municipal civil infraction punishable pursuant to Flint City Ordinance §1-19

(f) Inspection Fees: For Complaint, Violation, or Recurrent Violation inspections, inspection fees as set forth in the Master Fee Schedule will be due and payable by the owner only if one or more of the following conditions are satisfied:

    1 When an inspection results in a violation notice being issued, and re-inspection after the expiration date of such notice or written time extension(s);

    2 When a complaint inspection is made upon a property that is not current in registration requirements; and/or

    3. When the property is occupied contrary to a violation notice that prohibits occupancy.

For Tri-Annual or Area inspections, inspection fees shall be due and payable by the owner as set forth in the Master Fee Schedule.

### § 24-4.3.4 Revocation of Certificate of Compliance, Reinstatement

(a) The Enforcing Agency shall revoke the Certificate of Compliance for a rental dwelling if an owner fails to correct a violation after having been notified of the violation pursuant to this

Comprehensive Rental Inspection Code.

(b) The Enforcing Agency shall issue a Notice of Revocation to the owner that shall state:

1. That a Certificate of Compliance for a rental unit or dwelling will be revoked as of a date specified, not to exceed thirty (30) days after issuance of the Notice;

2. The reason(s) for the revocation;

3. That occupying or allowing occupancy after revocation of a Certificate of Compliance is punishable as a civil infraction, pursuant to Flint City Ordinance §1-19.

4. That an owner may appeal the Notice of Revocation by filing an appeal with the Building Code Board of Appeals.

(c) The Enforcing Agency shall send a copy of a Notice of Revocation to each dwelling unit in a rental dwelling. The copy of the notice shall be addressed "Occupant" and shall be sent by regular mail. Failure of any tenant to receive the Notice of Revocation shall not invalidate any proceedings authorized by this Comprehensive Rental Inspection Code.

(d) An owner may appeal the revocation of his/her Certificate of Compliance to the Building Code Board of Appeals.

(e) An owner who corrects the violations warranting revocation may request that the Enforcing Agency reinstate a Certificate of Compliance. If, after an additional re-inspection, the Enforcing Agency determines that the rental dwelling has been brought into compliance with the standards of this Comprehensive Rental Inspection Code, the Certificate of Compliance shall be reinstated.

(f) All fees, as set forth in the Master Fee Schedule, must be paid by the owner prior to reinstatement. Reinstatement of the Certificate shall not extend or change the Certificate's expiration date.

## § 24-4.7 Posting Requirement, Court-Ordered Compliance, Limitation on Remedies.

(1) The owner of a multi-unit rental dwelling must conspicuously post a copy of the Certificate of Compliance in a common area or on-site office.

(2) In addition to the provisions of Flint City Ordinance §1-19, the Enforcing Agency may request that the Department of Law initiate an action in the 67th District Court or another court of competent jurisdiction to require that any person comply with any provision of this ordinance. Furthermore, violations of this Comprehensive Rental Inspection Code shall be deemed a nuisance.

(3) The owner of a rental dwelling must acquire and maintain a valid Certificate of Compliance for a rental dwelling in order to be entitled to collect rents and/or evict tenants for non-payment of rent.

## § 24-4.8 Authority to Promulgate Rules

The Enforcing Agency shall have the authority to promulgate administrative rules reasonably necessary to implement this Comprehensive Rental Inspection Code.

**Sec. 2. This ordinance shall become effective immediately upon publication.**

Adopted this _____ day of

_____ A.D., 2020.

_____

**Sheldon A. Neeley, Mayor**

_____

**Inez M. Brown, City Clerk**

**APPROVED AS TO FORM:**

_____

**Angela Wheeler, Chief Legal Officer**

**VIOLATION RECORDS**

| EX. 4 |

ADDRESS:

INSPECTOR_____ DATE:_____
SINGLE FAMILY ☐ MULTI UNIT ☐ # of units ___ COMPLIANCE TIME (DAYS) ☐ 10 ☐ 15 ☐ 30 ☐ 60 ☐ 90
TYPE OF INSPECTION: RENTAL ☐ COMPLAINT ☐ CLEAR POSTER #_____ ADD POSTER#_____
(Attach Rental Inspection Request, Complaint or Real Estate Summary)

CODE: circle code                    VIOLATION: circle or highlight choice of words in ( ) or write in

| | |
|---|---|
| NOTE: | The following violations were found during an (**exterior, interior**) inspection. |
| 2-0 | Swimming pools shall be maintained in a clean and sanitary condition, and in good repair. |
| 2-1 | Inadequate drainage exists in the (**front yard, side yard, back yard, drive, garage,** _____). |
| 3-1 | The (**water heater, siding, roofing, wiring, furnace** _____ ) has been installed without a valid permit or approval. |
| 3-3 | The (**shrubs, bushes, trees**) are growing over (**driveway, sidewalk**). The (**shrubs, bushes, trees**) shall not obstructs foot traffic, and the view of persons entering or leaving (**driveway, neighboring driveway**). |
| 4-1 | The exterior property area has (**trash & debris, tall grass, weeds, items of questionable value,** _____ ) which is/are detrimental… |
| 5-1 | There is/are (**items of questionable value, dirt, filth, garbage, in the yard, garage, house, cellar**) |
| 6-0 | This building lacks address numbers. |
| 6-1 | The (**foundation walls of house, garage, porch have cracks, holes, have deteriorated masonry**). |
| 7-1 | The exterior surfaces of the (**house trim, garage, siding, porch floor / ceiling**) have flaking paint. |
| 8-2 | The (**exterior walls, eaves, house trim, siding corners**) are (**damaged, deteriorated,** ____). |
| 9-1 | Eaves trough system is (**missing in places, damaged, plugged with debris, lacks splash blocks**). |
| 10-0 | This dwelling does not have an eaves trough system. |
| 11-0 | Defacement of property. |
| 11-2 | The (**porch, house, garage**) roof has (**leaks, moss, missing / curled and/or deteriorating shingles**). |
| NOTE: | The house roof has curled, damaged shingles, but there is no evidence of leaks. Meets minimum requirements at this time. |
| 12-1 | The (**porch, house, garage**) roof and/or wall is being damaged by trees, saplings or shrubbery. |
| 13-2 | The (**porch floor / steps / supports**) is/are not adequate for safety or is in unsound repair due to (**rotted treads, loose boards, deteriorated members, settling** _____ _____). |
| NOTE: | _____ _____ _____ _____ |
| | |
| 14-1 | Risers and stair treads of stairway to the (**basement, second floor, porch, landing**) are irregular… |
| 15-2 | The guardrail on the (**balcony, 2nd floor stairs, porch steps, basement stairs**) is (**loose, missing, in disrepair**). |
| 16-1 | Stairway to the (**porch, landing, second floor, basement**) lacks a handrail or handrail is loose. |
| 17-1 | The (**front, rear, side**) combination storm/security door(s) is/are in a state of disrepair. |
| 18-1 | Windows in (**several places, structure throughout,** _____ ) have broken glass and/or missing putty. |
| 18.1-1 | The window(s) and/or door(s) in (**several locations, structure throughout,** _____ _____ ) lack(s) insect screens. |
| 19-1 | Window sash in the (**structure throughout, several places,** _____ ) is/are badly deteriorated, damaged or defective. |
| 19.1-0 | This dwelling has security grills and/or bars on bedroom windows. |
| 20-1 | The window(s) in the (**bedroom, living room,** _____ _____ ___ ) is/are not capable of being easily opened. |
| NOTE: | The windows in the (**bedroom, living room, kitchen** _____ _____ ) do not have locks. |
| 21-2 | The (**front, rear, side, bedroom, closet, bathroom** _____ ) door(s) (**is missing, deteriorated, has defective or missing hardware, does not close properly, does not lock properly**). |
| | _____ _____ _____ _____ |
| NOTE: | The (**front, rear, side**) door does not have dead bolt lock. |
| | |
| 22-1 | The (**back, front, side**) entrance door(s) has/have a lock which requires a key to open from the inside. |
| 23-1 | The (**front, rear, side,** _____ **door, window**) frames are not fitted properly. |
| 24-0 | There is evidence of surface water leakage through the cellar walls, etc. |

29-1    The grade at (Southwest corner, perimeter, front porch, _____) of house foundation is low.

30-1    The floor(s) in the (porch, kitchen, bathroom, first floor, second floor, _____) are sagging.

31-1    The (bathroom, kitchen, _____) floor(s) is are in disrepair and or deteriorated.

32-1    The (walls, ceilings, floors, _____ throughout structure, in several places, in the _____) are in a state of disrepair.

NOTE:    Kitchen or bathroom cupboards are in disrepair.

33-1    The following are in a state of being remodeled: (kitchen, bathroom, _____).

34-0    This structure contains apartment units which share the same water closet, bathing and lavatory facilities.

35-1    The (front bedroom, rear bedroom, _____ is a non-conforming bedroom.

35-0    This building lacks an approved garbage disposal facility.

37-1    The (kitchen, bathroom, laundry room) counter top is in a state of disrepair...

38-0    Plug cover(s) for sewer cleanout(s) is are missing or defective.

38.1-1    Floor drain(s) in the (basement, _____) lack(s) a leg grate or grid.

38.2-2    The (kitchen drain, bathroom drain, fitting at the main stack _____) is are (defective, leaking).

39-1    Water damage to wall is evident where tub and wall/floor meet in the (1st floor, 2nd floor) bathroom.

40-1    Water pipe(s) show(s) evidence of deterioration, or have been removed in the (basement, kitchen, bath).

40.1-1    The (exterior sillcock, laundry tub) are not equipped with a atmospheric type vacuum breaker...etc.

41-1    The water faucet in the (bathtub, sink, laundry tub) is below the rim of the tub...

41-2    Water faucet(s) in the (kitchen, bathroom, laundry tub _____) is are (leaking, in disrepair).

42.1    The (toilet, bathtub, sink, lavatory, shower in _____ is defective, is missing, is in a state of disrepair) _____

42.1-1    The toilet tank(s) in (1st floor bathroom, 2nd floor bathroom, half bath) has submerged ballcock(s)...

43-0    Plumbing not in service at time of inspection.

44.1-0    The boiler is not equipped with proper backflow preventer.

44-1    There is an illegal installation of (gas line to the furnace, gas line to the water heater, _____).

45-0    This structure does not have proper bathtub or shower facilities.

46-0    This dwelling unit has no kitchen sink

47-1    Temperature-pressure relief valve on water heater (is non-existent, is improper, lacks discharge tube).

48-0    The laundry facilities are not directly connected to the sewer system.

NOTE:    The dryer (is not vented, is missing vent hose, exterior vent cover is missing)

49-1    The water heater (has leaks, is defective, has improper water line, vent pipe is missing screws).

50-2    Chimney is in a state of disrepair (above the roofline, in cellar) due to (loose bricks, holes

NOTE:    The fireplace is in disrepair due to (defective and/or missing damper, loose bricks, _____)

NOTE:    Furnace shall be checked and certified by a licensed heating contractor.

51-1    The heating system (is in disrepair, has defective ductwork, vent pipe is missing screws, _____)

52-0    The heating unit or system in this structure is inadequate to heat the dwelling.

53-0    Heating facilities are not in service.

54-1    The (furnace, water heater) vent pipe(s) is are not properly sealed where it enters chimney.

55.1-2    The required (fire door in _____) is are (missing, has/have defective hardware).

56-0    Oil supply line to furnace is exposed and unprotected.

57-0    Converted furnace inspection door is mechanically locked...

58-1    Furnace lacks proper (upper heating limit controls, _____).

58.1-1    Heating plant (has deteriorating vent pipe, has rusted jacket, has missing front cover, _____).

59-1    There is an unused gas line located in the (kitchen, basement, laundry area) that is uncapped.

60-0    This building does not have approved containers and covers for the storage of rubbish.

| | |
|---|---|
| 61-1 | There is evidence of (**rats, mice, roaches, vermin**) in this structure and/or on the premises. |
| NOTE: | Accumulation of items prevented a thorough inspection of the (**electrical system, basement,** ____. |
| OTHER: | |

_____     _____

| | |
|---|---|
| 62-1 / 63-1 | The conditions listed below were noted in a visual inspection of the electrical system: |
| | The bathroom lacks a GFCI receptacle. |
| | The kitchen lacks a GFCI receptacle. |
| | Lacks an appliance circuit. |
| | Lacks a grounded laundry circuit. |
| | Wiring under kitchen sink lacks circuit. |
| | **Faulty (breaker, light fixture, switch, outlet)** in __ ____ _____ |
| | Lack of general illumination lighting in _____ |
| | Deteriorated or damaged meter cable. |
| | Open splices in _____ |
| | Illegal wiring cords in _____ |
| | Improper use of extension cords for permanent wiring in ___ |
| | **Loose (wiring, receptacle, light fixture)** in _____ |
| | **Missing (knockouts, wall/ceiling junction boxes, light fixture covers, outlet covers, switch covers)** in _____ |
| | Open grounds. |
| | Hot/neutral reversed in _____ |
| | Switches and/or outlets painted over in _____ |
| | Survey inspection needed. |
| | Label all breakers in breaker box. |
| | Ungrounded service box. |
| | Lack of a bonding jumper at the water meter. |
| | Other |

| | |
|---|---|
| 66-0 | Electrical system not in service at the time of inspection. |
| 67.1-3 | The (room: _____) on the (1ˢᵗ floor, 2ⁿᵈ floor) measures ( _____ ). |
| 67-2 | The ceiling height of the ( _____ ) measures ( _____ ). |
| 68-1 | The (**front, rear, upstairs**) bedroom of this dwelling lacks the minimum of 70 square feet of floor area. |
| 69-1 | Smoke detectors not working. |
| 70-0 | The cellar of this structure is illegally used for living purposes. |
| 71-2 | The (**bathroom**) in the (**1ˢᵗ floor, 2ⁿᵈ floor**) has inadequate provisions for ventilation. |
| 72-1 | The (**hall, 2ⁿᵈ floor stairway, basement stairway,** _____) is/are not adequately lighted. |
| 73-1 | The cellar floor is (**in disrepair**). |
| 74-0 | This multiple dwelling does not contain the proper number of water closets. |
| 75-1 | The apartment's ( _____ ) the first floor lack the minimum legal requirements for safety. |
| 76-0 | The T.V. antenna is in disrepair and hazardous. Antenna shall be properly re-installed or removed. |
| 77-1 | The laundry drain (is plugged, is sluggish, _____ ). |
| 78-1 | The (**sewer, lavatory, kitchen, drains, toilet** _____ ) are plugged or sluggish. |
| 79-1 | The (**garage, tool shed, fence,** _____ ) is structurally weakened and/or deteriorated. |
| 80-1 | The (**garage, porch, shed, house roof**) has a structural lean and/or sag. |
| 82-0 | This structure is not currently registered with the City of Flint as a multiple family dwelling. |
| 83-0 | The violations listed are the result of a specific complaint, and do not reflect a complete inspection. |
| 84-1 | An accumulation of snow prevented a thorough inspection of the (**roof,** _____ ). |
| 85-0 | This violation notice is being issued as a result of a "Re-inspection Request" on the subject property. Any further inspection required must be paid for at the rate of $120.00 per occasion. |
| 91-0 | Any person having charge of any dog shall keep the yard, pen, etc. maintained / cleaned. |
| 93-1 | There is/are (**unlicensed vehicles, dismantled vehicle,** _____ ) on this residential property. |
| 95-0 | This structure is vacant, open and littered with trash and/or debris. The structure shall be boarded… |
| 96-1 | This structure is not currently registered as a rental. Therefore, an inspection fee of ($ _____ ) … |
| 97-1 | This structure is occupied contrary to a Violation Notice, therefore, an inspection fee of ($ _____ ) … |
| 98-1 | This Violation Notice is issued as a result of a Complaint Inspection. If the corrections are not made on or before the expiration date, a civil infraction violation notice or civil infraction citation will be issued. |
| 99-0 | All rental dwellings shall be registered with and certified by the City of Flint. Inspection fee of ($ _____ ) |
| 111 | **RENTAL CERTIFICATE WILL BE ISSUED UPON COMPLETION OF VIOLATIONS.** |
| Other: | |

City of Flint
1101 S. Saginaw
Flint, MI 48502



**WATER &/OR SEWER BILL**

**DATE:**   12/27/2023

Route          Cycle
2100VN         1404-2162

Account Number
TACK-000773-0000-11

BOSSMAN INVESTMENTS, INC
C/O: KARTER LANDON
P O BOX 1234
GRAND BLANC, MI 48480

Total Amount Due
**$3,642.28**

*EX, 5*

Property Address
773 TACKEN ST

Account Status
**Inactive-Balance Due**

URGENT:  Please rectify this matter immediately

Your delinquent City of Flint water bill has been turned over to the Enforcement Department
for collection.  Please be advised that failure to pay the amount due could result in that
amount being placed as a lien on the summer property taxes.

To avoid further collection proceedings, please pay the the full balance within 30 days.
Payment plan agreements must be made in the Enforcement office at 1101 S Saginaw St, Flint
MI 48502, located in the basement level of City Hall.

***Use your credit card to pay this bill online or by phone.
    Visit www.cityofflint.com or call 1-877-495-2729. ***

Please contact our office at (810)766-7470 ext 2155, 2156 or 2153 for any additional
information.

Thank you in advance for your prompt attention to this matter.

---

Keep This Portion For Your Records

Return This Portion With Payment

**WATER &/OR SEWER BILL**
City of Flint
1101 S. Saginaw

Route          Cycle
2100VN         1404-2162

Account Number
TACK-000773-0000-11

Property Address:
773 TACKEN ST

|              |            |
|--------------|------------|
| Due Date     | 01/31/2024 |

BOSSMAN INVESTMENTS, INC
C/O: KARTER LANDON
P O BOX 1234
GRAND BLANC, MI 48480

|              |            |
|--------------|------------|
| Amount Due   | **$3,642.28** |



**653 VICTORIA AVE** FLINT MI 48432  Property Address

Parcel Number: 41 19 335 002 Location ID: 4KT 000653 0000-04

**UB Customer Name:** CANDICE KAPTUR

Summary Information
- Residential Building Summary

- Assessed Value $15,906 | Taxable Value $3,609
- Property Tax Information Found
- Utility Billing Information Found

*EX.6*

## History

| Period | Activity | Trans Type | Ref Num | Trans | Chgs | Amount | Balance |
|---|---|---|---|---|---|---|---|
| 12/18/2023 | Penalty | | | 0.00 | 0.00 | $6.50 | $1,426.29 |
| 11/20/2023 | Penalty | | | 0.00 | 0.00 | $6.50 | $1,419.59 |
| 10/19/2023 | Penalty | | | 0.00 | 0.00 | $6.48 | $1,413.09 |
| 9/20/2023 | Penalty | | | 0.00 | 0.00 | $6.46 | $1,406.63 |
| 8/18/2023 | Penalty | | | 0.00 | 0.00 | $6.44 | $1,400.17 |
| 7/18/2023 | Penalty | | | 0.00 | 0.00 | $6.44 | $1,393.73 |
| 6/20/2023 | Penalty | | | 0.00 | 0.00 | $6.40 | $1,387.33 |
| 5/18/2023 | Penalty | | | 0.00 | 0.00 | $6.36 | $1,380.93 |
| 4/19/2023 | Penalty | | | 0.00 | 0.00 | $6.36 | $1,374.57 |
| 3/20/2023 | Penalty | | | 0.00 | 0.00 | $6.34 | $1,368.21 |
| 2/16/2023 | Penalty | | | 0.00 | 0.00 | $6.30 | $1,361.87 |
| 1/18/2023 | Penalty | | | 0.00 | 0.00 | $6.30 | $1,355.57 |
| 12/19/2022 | Penalty | | | 0.00 | 0.00 | $6.28 | $1,349.27 |
| 11/18/2022 | Penalty | | | 0.00 | 0.00 | $6.24 | $1,342.99 |
| 10/18/2022 | Penalty | | | 0.00 | 0.00 | $6.22 | $1,336.75 |
| 9/20/2022 | Penalty | | | 0.00 | 0.00 | $6.22 | $1,330.53 |
| 8/17/2022 | Penalty | | | 0.00 | 0.00 | $6.18 | $1,324.31 |
| 7/19/2022 | Penalty | | | 0.00 | 0.00 | $6.18 | $1,318.13 |
| 6/15/2022 | Penalty | | | 0.00 | 0.00 | $6.14 | $1,311.95 |
| 5/18/2022 | Penalty | | | 0.00 | 0.00 | $6.12 | $1,305.81 |
| 4/19/2022 | Penalty | | | 0.00 | 0.00 | $6.12 | $1,299.69 |
| 3/17/2022 | Penalty | | | 0.00 | 0.00 | $6.10 | $1,293.57 |
| 2/15/2022 | Penalty | | | 0.00 | 0.00 | $6.06 | $1,287.47 |
| 1/18/2022 | Penalty | | | 0.00 | 0.00 | $6.06 | $1,281.41 |
| 12/14/2021 | Penalty | | | 0.00 | 0.00 | $6.04 | $1,275.35 |
| 11/11/2021 | Penalty | | | 0.00 | 0.00 | $6.00 | $1,269.31 |
| 10/13/2021 | Penalty | | | 0.00 | 0.00 | $5.98 | $1,263.31 |
| 9/16/2021 | Penalty | | | 0.00 | 0.00 | $5.96 | $1,257.33 |
| 8/19/2021 | Penalty | | | 0.00 | 0.00 | $5.96 | $1,251.37 |
| 7/20/2021 | Penalty | | | 0.00 | 0.00 | $5.92 | $1,245.41 |
| 6/21/2021 | Penalty | | | 0.00 | 0.00 | $5.92 | $1,239.49 |
| 5/18/2021 | Penalty | | | 0.00 | 0.00 | $5.88 | $1,233.57 |
| 4/20/2021 | Penalty | | | 0.00 | 0.00 | $5.86 | $1,227.69 |
| 3/22/2021 | Penalty | | | 0.00 | 0.00 | $5.86 | $1,221.83 |
| 2/19/2021 | Penalty | | | 0.00 | 0.00 | $5.84 | $1,215.97 |
| 1/20/2021 | Penalty | | | 0.00 | 0.00 | $5.82 | $1,210.13 |
| 12/16/2020 | Penalty | | | 0.00 | 0.00 | $5.78 | $1,204.31 |
| 11/20/2020 | Penalty | | | 0.00 | 0.00 | $5.78 | $1,198.53 |
| 10/16/2020 | Penalty | | | 0.00 | 0.00 | $5.76 | $1,192.75 |
| 9/16/2020 | Penalty | | | 0.00 | 0.00 | $5.72 | $1,186.99 |
| 8/24/2020 | Penalty | | | 0.00 | 0.00 | $5.72 | $1,181.27 |
| 7/16/2020 | Penalty | | | 0.00 | 0.00 | $5.68 | $1,175.55 |
| 6/17/2020 | Penalty | | | 0.00 | 0.00 | $5.68 | $1,169.87 |
| 5/15/2020 | Penalty | | | 0.00 | 0.00 | $5.64 | $1,164.19 |
| 4/17/2020 | Penalty | | | 0.00 | 0.00 | $5.64 | $1,158.55 |
| 3/18/2020 | Penalty | | | 0.00 | 0.00 | $5.62 | $1,152.91 |
| 2/14/2020 | Penalty | | | 0.00 | 0.00 | $5.58 | $1,147.29 |
| 1/17/2020 | Penalty | | | 0.00 | 0.00 | $5.58 | $1,141.71 |
| 12/16/2019 | Penalty | | | 0.00 | 0.00 | $5.56 | $1,136.13 |
| 11/14/2019 | Penalty | | | 0.00 | 0.00 | $5.52 | $1,130.57 |
| 10/23/2019 | Penalty | | | 0.00 | 0.00 | $5.52 | $1,125.05 |
| 9/23/2019 | Penalty | | | 0.00 | 0.00 | $5.50 | $1,119.53 |
| 8/21/2019 | Penalty | | | 0.00 | 0.00 | $5.48 | $1,114.03 |
| 8/7/2019 | Meter Read | RWTR | Auto Read | 32.00 | 22.00 | $0.00 | $1,108.55 |
| 7/18/2019 | Penalty | | | 0.00 | 0.00 | $5.44 | $1,108.55 |
| 6/20/2019 | Penalty | | | 0.00 | 0.00 | $5.44 | $1,103.11 |
| 5/17/2019 | Penalty | | | 0.00 | 0.00 | $5.42 | $1,097.67 |
| 4/17/2019 | Penalty | | | 0.00 | 0.00 | $5.42 | $1,092.25 |
| 3/18/2019 | Penalty | | | 0.00 | 0.00 | $5.36 | $1,086.85 |
| 2/14/2019 | Penalty | | | 0.00 | 0.00 | $5.34 | $1,081.49 |
| 1/22/2019 | Penalty | | | 0.00 | 0.00 | $5.34 | $1,076.15 |
| 12/19/2018 | Penalty | | | 0.00 | 0.00 | $0.45 | $1,070.81 |
| 11/26/2018 | Bill Calculated | 09/12/17-11/08/18 | | 0.00 | 0.00 | $887.32 | $1,070.36 |
| 11/19/2018 | Bill Adjustment | RESTUFFED CB | | 0.00 | 0.00 | $90.00 | $183.04 |
| 11/12/2018 | Bill Adjustment | RESTUFFED CB | | 0.00 | 0.00 | $90.00 | $93.04 |
| 11/8/2018 | Meter Read | RWTR | Actual | 10.00 | 8.00 | $0.00 | $3.04 |
| 6/26/2018 | Bill Adjustment | 2016 WTR LIEN | | 0.00 | 0.00 | ($75.00) | $3.04 |
| 6/18/2018 | Penalty | | | 0.00 | 0.00 | $0.38 | $78.04 |
| 5/21/2018 | Penalty | | | 0.00 | 0.00 | $0.38 | $77.66 |
| 4/19/2018 | Penalty | | | 0.00 | 0.00 | $0.38 | $77.28 |
| 3/21/2018 | Penalty | | | 0.00 | 0.00 | $0.38 | $76.90 |
| 2/19/2018 | Penalty | | | 0.00 | 0.00 | $0.38 | $76.52 |
| 1/22/2018 | Penalty | | | 0.00 | 0.00 | $0.38 | $76.14 |
| 12/27/2017 | Penalty | | | 0.00 | 0.00 | $0.38 | $75.76 |
| 11/17/2017 | Penalty | | | 0.00 | 0.00 | $0.38 | $75.38 |
| 9/13/2017 | Bill Adjustment | STUFFED CB | | 0.00 | 0.00 | $75.00 | $75.00 |
| 9/12/2017 | Meter Read-Initial | RWTR | Estimate | 2.00 | 0.00 | $0.00 | $0.00 |
| 4/27/2016 | Payment Posted | R16 1558099 | | 0.00 | 0.00 | ($100.00) | $0.00 |
| 4/11/2016 | Penalty Reversal | PEN ADJ | | 0.00 | 0.00 | ($1.50) | $100.00 |
| 3/28/2016 | Penalty | | | 0.00 | 0.00 | $1.50 | $101.50 |

*Ex. 7a*

State of Michigan
Uniform Law Citation

Ticket No. **MC 02159**

Victim Involved

The People of the State of Michigan
☐ Township ☒ City ☐ Village ☐ County

Local Use/Arrest No

Offense Code **24**

BAC

OF **FLINT**

THE UNDERSIGNED SAYS THAT ON: Mo. **4** Day **2** Year **24**   At approximately   A.M.   P.M.   Date of Birth   Month   Day   Year

State   Oper./Chauff   Driver License Number   SSN (last 4 digits)

Race   Sex   Height   Weight   Hair   Eyes   Occupation/Employer

Name (First, Middle, Last)   **KAETEN R. LANSON**

Street **PO BOX 1234**

City **GRAND BLANC**   State **MI**   Zip Code **48480**

Vehicle Plate No.   Year   State   Vehicle Description (Year, Make, Color)   Veh. Type

THE PERSON NAMED ABOVE in violation of § **24-4.2.2**
☒ Local Ordinance ☐ State Law ☐ Administrative Rule
UPON **3622 WESTERN Rd.**

AT OR NEAR

WITHIN ☒ CITY ☐ VILLAGE ☐ TOWNSHIP OF   **FLINT**
COUNTY OF **GENESEE**

☐ Nuisance Ordinance
☐ Licensee Ordinance
☒ Zoning Ordinance
☐ Sign, Lighting & Display Ordinance
☐ Animal & Fowl Ordinance
☐ Other

☐ Building Code
☐ Plumbing Code
☐ Electrical Code
☐ Mechanical Code
☐ Defective Equipment

☐ Speeding   MPH in a   MPH
☐ Zone (formerly   MPH Zone)
☐ Disobey Traffic Signal
☐ Disobey Stop Sign
☐ No Operator's License in Possession

DID THE FOLLOWING

Describe/Remarks   **Failure To Register Rental**

CHECK IF APPROPRIATE ☐ Damage to Property   ☐ Local Court Bond $
☐ Vehicle Impounded ☐ Injury   ☐ License Posted in Lieu of Bond
☐ Traffic Crash ☐ Death   ☐ Appearance Certificate
Person in Active Military Service ☐ Yes ☐ No ☐ None

SEE DATE BELOW. SEE BACK OF CITATION FOR EXPLANATION AND INSTRUCTIONS
Appearance Date on or before
Hearing Date (if applicable) on _____ ☒ Contact Court
☐ Juvenile Traffic Misd. (Court will Notify)   ☐ Formal Hearing Required. (Court will Notify)
in the **67TH DISTRICT 5th DIV.** Court of   **CITY OF FLINT**
Court Address & Phone Number

630 S. SAGINAW, FLINT, MI 48502-1526
(810) 766-8968

☐ I personally served a copy of the complaint upon the defendant.
☐ I served a copy of the complaint upon the owner/occupant by posting and by sending a copy to the owner by first class mail at the last known address
I declare under the penalties of perjury that the statements above are true to the best of my information, knowledge, and belief.
Complainant's Signature and Title pt if applicable

Officer's Name (printed)   **JACK HIPPE I**   Month **4** Day **2** Year **24**   Officer's ID No.

Agency ORI   Agency Name

MI-

Violation for Which Court May Waive Fine/Costs   Correct the violation.  Present the citation to any law enforcement officer to certify the correction.  Mail or bring this citation to the court clerk at the address shown above before your appearance or hearing date
OFFICER CERTIFICATION   I certify that the violation described above has been corrected
Officer's Signature   Officer's ID No.   Date

Agency ORI   Agency Name

UC-01b
(rev. 6/05)

COURT COPY

**PRESS – YOU ARE MAKING THREE COPIES**
ORDER BY FORM NO. M77 (REVISED 6/05)
Fidlar Online @ www.fidlaronline.com



# CITY OF FLINT
## Department of Planning and Development

*EX. 7b*

**Sheldon A. Neeley**
**Mayor**

01/17/2023

**LANDON, KARTER R**
**PO BOX 1234**
**GRAND BLANC, MI  48480**

**RE: 3622 WESTERN RD**          **Property Parcel# 47-33-356-026**

Dear LANDON, KARTER R

A review of our records indicate that the above-referenced property is due for a rental inspection pursuant to Flint City Code § 24-4.3.3.

Enclosed is an application for inspection of your rental dwelling.  Please complete the application forms and return them to this office, along with payment of fee(s) listed below.  If you submit the application and payment in person, the date and time for inspection will be provided at that time.  If you submit the application and payment by mail, the date and time for inspection will be mailed to the address on file.  Please be sure to provide adequate contact information and update your address if necessary.

Once the inspection has been scheduled, it is your responsibility to ensure that the property is accessible, including the interior of the dwelling, to the inspector(s) at the date and time specified.

**Failure to comply within 30 days of this notice will result in a LATE FEE and possible legal action.**

If you have any questions, you may contact us **between the hours of 9 AM and 3 PM** in person; by phone at (810) 766-7284; or by email at BSI@cityofflint.com.

---

**APPLICABLE FEES:**

☐     One-Time Rental Registration Fee ($250.00)

☒     Rental Inspection Fee (see fees on enclosed application)

---

City of Flint • 1101 S. Saginaw Street RM S106 • Flint, Michigan  48502
www.cityofflint.com • (810) 766-7284 • Fax: (810) 762-7379

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Karter Landon
12140 Francesca Dr.
Grand Blanc MI 48439

**DEFENDANTS**

City of Flint, Michigan    Micheal Reiter
Sheldon Neeley            Amanda Trujillo
Emily Doerr

1101 S. Saginaw Flint MI 48502

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Genesee
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*
Thomas Sparrow
1101 S Saginaw 3rd. Floor
Flint MI 48502

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor Management Relations | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Section 1983

Brief description of cause:
Violation of Fourth, Fifth, Fourteenth Amendment Rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE  Linda V. Parker    DOCKET NUMBER  4:16-cv-11061

DATE
February 7, 2024

SIGNATURE OF ATTORNEY OF RECORD

Karter Landon, Pro-se

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

PURSUANT TO LOCAL RULE 83.11

1.　　　　Is this a case that has been previously dismissed?　　　　☐ Yes
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.　　　　Other than stated above, are there any pending or previously
discontinued or dismissed companion cases in this or any other　　☐ Yes
court, including state court? (Companion cases are matters in which　☑ No
it appears substantially similar evidence will be offered or the same
or related parties are present and the cases arise out of the same
transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

Notes :