UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARTER LANDON,

      Plaintiff,

v.

      Case No. 24-cv-11876
      Honorable Linda V. Parker

CITY OF FLINT, ET AL.,

      Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 11) AND GRANTING DEFENDANTS' MOTION TO DISMISS (ECF NO. 19)**

This is Karter Landon's second lawsuit challenging the City of Flint's inspection requirements for residential rental properties within its jurisdiction. In the first lawsuit, the Court granted Landon's motion for a temporary restraining order and preliminary injunction because Flint's then current Comprehensive Rental Inspection Code did not provide a warrant requirement or offer property owners pre-compliance review. *Landon v. City of Flint*, No. 16-cv-11061, 2016 WL 7661390 (E.D. Mich. Nov. 30, 2016), *adopted in* 2017 WL 345854 (E.D. Mich. Jan. 4, 2017). Landon and the City of Flint (hereafter "City") subsequently settled the case. Stip. of Dismissal, *id.* (E.D. Mich. May 31, 2018), ECF No. 83. This lawsuit comes after the City amended the relevant city ordinance in

September 2020.[1]  (ECF No. 1 at PageID. 49-53; *see also* ECF No. 16-5 at PageID. 225.)

In this current action, filed on July 19, 2024, Landon is suing the City and the following City officials in their individual and official capacities: Mayor Sheldon Neeley, Head of Development Emily Doerr, Treasurer and Water Department Head Amanda Trujillo, Chief Building Inspector Michael Reiter, Chief Financial Officer Phillip Moore, and Chief Attorney William Kim.  (*See* ECF No. 1.)  In his Complaint, Landon claims that Defendants have again impeded and threatened to further impede his right to be free from unlimited warrantless searches through enforcement of the City's Rental Inspection Program.  (*See generally id.*)  He claims violations of his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and the "Unconstitutional Conditions" doctrine and tortious interference.[2]  (*Id.*)

---

[1] Because of this amendment, Landon is incorrect when he argues that this Court already has found Defendants' conduct to be unconstitutional.  (ECF No. 11 at PageID. 80.)  That finding was based on an earlier version of the code, which did not provide a warrant requirement or offer property owners pre-compliance review.  As set forth *infra*, the current version provides for both.

[2] The Complaint contains several additional "counts"; however, Landon does not state independent claims in them.  (*See, e.g.*, ECF No. 1 at PageID. 28 (Count IV: "Loss of Rents and Other Damages"; Count V: "Nominal and Punitive Damages").)

The matter is presently before the Court on Landon's motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 (ECF No. 11) and Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (c) (ECF No. 19).  In his motion, Landon asks the Court to enjoin enforcement of Section 24-4.3.1 of the City's Ordinances, which requires property owners to obtain a Certificate of Compliance before a tenant is allowed to occupy a property.  Landon claims that the ordinance is unconstitutional because it mandates an inspection—i.e., a warrantless search—in order to obtain the Certificate of Compliance, and property owners are threatened with losing their right to rent their properties to tenants or with prosecution if they fail to comply.  The motion has been fully briefed.  (ECF Nos. 16, 17.)

In their motion, Defendants argue that Landon lacks standing and fails to state a claim upon which relief may be granted.  (ECF No. 19.)  Defendants also argue that they are entitled to qualified immunity or immunity under Michigan's Governmental Tort Liability Act ("GTLA"), Mich. Comp. Laws § 691.1401 *et seq.*.  (*Id.*)  The motion also has been fully briefed.  (ECF Nos. 20, 21.)

## I.   Standard of Review

### A.   Preliminary Injunction

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence

of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Enchant Christmas Light Maze & Mrkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 535-36 (6th Cir. 2020) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012)).  These factors must be balanced. *Union Home Mortg. Corp. v. Cromer*, 31 F.4th 356, 365-66 (6th Cir. 2022) (citation omitted).  "But where there is no likelihood of *either* success on the merits *or* irreparable harm, an injunction is unwarranted—regardless of the showing on the other factors.  *Id*. (collecting cases).

    **B.**    **Motion to Dismiss**

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss for lack of jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  Defendants raise a factual attack.

A factual attack is "not a challenge to the sufficiency of the pleading's allegation, but a challenge to the factual existence of subject matter jurisdiction." *Id*.  When a factual attack, also known as a "speaking motion," raises a factual controversy, the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.* at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).  "In its review, the district court has wide discretion to allow affidavits, documents, and

4

even a limited evidentiary hearing to resolve jurisdictional facts." *Id*. "[W]hen a defendant produces evidence challenging the factual existence of [subject matter jurisdiction], a plaintiff must generally prove [subject matter jurisdiction] with evidence, even at the motion-to-dismiss stage." *Harris v. Lexington-Fayette Urban Cnty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) (citing *Taylor v. KeyCorp.*, 680 F.3d 609, 613 (6th Cir. 2012); *Superior MRI Servs., Inc. v. All Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015)).

A Rule 12(c) motion is subject to the same standard of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)). A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However,

"[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court may take judicial notice only "of facts which are not subject to reasonable dispute." *Jones v. Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).

## II. Background

### A. The City's Ordinances

The City's ordinance with respect to rental properties requires property owners to register their properties and obtain a Certificate of Compliance before a unit is occupied by a tenant. Flint City Ordinance ("F.C.O.") §§ 24-4.2.1, 24-4.3.1(a). The ordinance provides that a Certificate of Compliance will be issued only after an inspection. *Id*. § 24-4.3.1(b). Failing to register a rental property or renting a property without the required Certificate of Compliance is a civil infraction punishable pursuant to F.C.O. Section 1-29. *Id*. §§ 24-4.2.2(d), 24-4.3.1(a).

Registered rental dwellings must be inspected every three years. *Id.* § 24-4.3.3(a). They also are subject to an inspection where a complaint is made that the

7

property is not in compliance with the Comprehensive Rental Inspection Code or an enforcing agent discovers a violation while conducting his or her duties. *Id*. Section 24-4.3.3(c), which describes the City's access to rental units to conduct inspections, provides:

> To conduct an inspection, the Enforcing Agency will request permission from the owner and/or tenant to enter any rental dwelling/unit during regular business hours. If permission to enter is denied, the Enforcing Agency shall seek an administrative search warrant from the 67th District Court or another court of competent jurisdiction.

*Id*. § 24-4.3(c).

The City's ordinances generally require water service to a property to be in the name of the property owner of record. F.C.O. § 46-48(a). However, water service made be placed in the name of a tenant provided the "residential rental property [is] registered with the City pursuant to Ordinance 3271, *or its subsequent amendments*," "a legally executed lease contains a provision that the tenant, not the property owner of record, shall be liable for the payment of water or sewage system bills," and other specified information is provided to the City. *Id*. § 46-48(b) (emphasis added).

    **B.**    **Landon's Properties**

Landon owns 40 rental homes in the City. (ECF No. 11 at PageID. 82.) He refuses to have the homes inspected to obtain a Certificate of Compliance, or otherwise. (*Id*.) He, therefore, has been unable to rent some of his properties and

claims that he risks being prosecuted. (*Id.*) Three of Landon's homes were empty in December 2023, six were empty as of February 2024, and seven were empty as of July 2024. (*Id.* at PageID. 78.)

## III. Applicable Law & Analysis

### A. Standing

Standing is a threshold matter, which a court must address first, because without standing it lacks power to adjudicate the merits of the case. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *Binno v. Am. Bar Ass'n.*, 826 F.3d 338, 344 (6th Cir. 2016). To establish Article III standing, Landon must allege facts showing that: "(1) he has suffered an injury-in-fact that is both '(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical'; (2) the injury is fairly traceable to the defendant's conduct; and (3) it is likely that the injury will be redressed by a favorable decision." *Binno*, 826 F.3d at 344 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999)).

Defendants argue that Landon lacks standing because: (1) none of his properties are registered rental dwellings and, therefore, are not subject to inspection under the City's ordinances; and (2) none of his properties have been inspected. However, Landon has not registered his rental dwellings because he claims he must then submit to a warrantless search. And he alleges that he has

9

been injured by this hurdle to renting the properties in the form of lost rental proceeds, the risk of prosecution, and civil penalties for renting properties without registration.

The Court finds that he has standing.

## B. Landon's Constitutional Challenges

Landon claims violations of his Fourth, Fifth, and Fourteenth Amendment rights and the "Unconstitutional Conditions" doctrine. He asserts that the City's rental ordinance violates his Fourth Amendment right to be free from a warrantless search, violates his Fourteenth Amendment due process rights by imposing unconstitutional conditions (i.e., warrantless searches) on his right to rent his real property, and results in a taking in violation of the Fifth Amendment. He seeks a declaration that Section 24-4 is unconstitutional on its face and as applied to him.

### 1. Fourth Amendment "Unreasonable Search"[3]

Landon asserts facial and as-applied challenges to the City's rental ordinance. On its face, the ordinance does not require the owners of rental

---

[3] To the extent Landon claims Defendants are violating his rights under the Fifth and Fourteenth Amendments by requiring him to submit to warrantless searches (*see* "Count I" at ECF No. 1 at PageID. 15), the claims fail. "When a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that amendment , not the more generalized notion of substantive due process, must be the guide for analyzing those claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

properties to submit to warrantless searches. Instead, Section 24-4.3.3(c) provides that where a request for permission to enter a rental dwelling is denied, "the Enforcing Agency *shall* seek an administrative search warrant from the 67th District Court or another court of competent jurisdiction." F.C.O. § 24-4.3.3(c) (emphasis added). Where city ordinances provide the opportunity for pre-compliance review before yielding to an inspection and contain an express warrant procedure, courts find them to be constitutional. *See City of Los Angeles v. Patel*, 576 U.S. 409, 420 (2015) (explaining that "in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker"); *Hometown Co-Op Apartments v. City of Hometown*, 515 F. Supp. 502, 503 (N.D. Ill. 1981) ("By providing for a warrant procedure in cases in which a new owner or lessee of property refuses to consent to an inspection by the building department, the City of Hometown has remedied the fatal flaw in its earlier point of sale inspection ordinance. The property owner is no longer forced to choose between consenting to a warrantless search or subjecting himself or herself to substantial fines for failure to procure a certificate of inspection."); *Williams v. City of Jackson*, No. 21-10749, 2022 WL 6601298, at *3 (E.D. Mich. Jan. 4, 2022), *adopted in* 2022 WL 4378688 (E.D. Mich. Sept. 22, 2022) ("Jackson's ordinance complies with the

Fourth Amendment by requiring enforcing agents to 'obtain a warrant from a court of competent jurisdiction' before entering property without the owner's consent.").

Landon also fails to present facts to support his "as applied" challenge. He does not claim that his rental properties have been searched without a warrant. In fact, he claims that "intends to refuse all efforts by the City to . . . inspect his properties." (ECF No. 1 at PageID. 10 ¶ 42.) He alleges that he was cited for refusing a warrantless inspection (*id.* at PageID. 26 ¶ 103(b)); however, the citation (which is cited to in his paragraph and attached to his pleading) is for "Failure to Register Rental" (*id.* at PageID 59).

The premise of Landon's claims is that the City requires an inspection before a Certificate of Compliance issues and prohibits landlords from renting property or putting water service in a tenants name unless a Certificate of Compliance has been obtained. Thus, Landon claims, he is being forced to submit to a warrantless inspection. But, as this and other courts have found, "there is nothing wrong with" a municipality requiring inspections to confirm a property is habitable before allowing a landlord to rent the property to tenants. *Nosse v. City of Ann Arbor*, No. 22-11283, 2023 WL 2250621, *8 (E.D. Mich. Feb. 27, 2023) (quoting *Halpern 2012, LLC v. City of Ctr. Line*, 404 F. Supp. 3d 1109, 1119 (E.D. Mich. 2019), *aff'd* 806 F. App'x 390 (6th Cir. 2020)); *see also Halpern 2012*, 806 F. App'x at 395 (indicating that the municipality's rental-property registration and inspection

12

requirements are not unconstitutional and constitute a "reasonable means of advancing its government interests in public safety and welfare"). "The underlying requirements that rental properties possess certificates of compliance and failure to do so may result in a blight violation are lawful, as is the requirement that landlords demonstrate compliance before being allowed to rent the property to tenants." *Nosse*, 2023 WL 2250621, at *8 (quoting *Halpern 2012*, 404 F. Supp. 3d at 1119; *MS Rentals, LLC v. City of Detroit*, 362 F. Supp. 3d 404 (E.D. Mich. 2019)).

For these reasons, Landon is not likely to prevail on the merits of his Fourth Amendment claim—which is the only claim on which he asserts his right to injunctive relief in his motion. Additionally, the claim is subject to dismissal under Rule 12(c).

### 2. Unconstitutional Taking

Landon claims Defendants' actions have resulted in a taking of his properties because he has been deprived of their economically viable use. (*See* ECF No. 1 at PageID. 27.) The Takings Clause of the Fifth Amendment provides, in relevant part: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. amen. V. The clause "bars the State from taking private property without paying for it." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 715 (2010); *see also Peters v. Fair*, 427 F.3d

1035, 1037 (6th Cir. 2005). Landon has not plausibly alleged a viable takings claim.

He does not allege facts to show that the City has prevented him from renting his properties. Undoubtedly the City has placed requirements on Landon and other residential property owners who want to rent their properties to tenants. The City has cited Landon for renting a property without complying with those requirements. However, the City "has the authority to regulate land and may impose fines for violating its ordinances." *Herschfus v. City of Oak Park*, 718 F. Supp. 3d 707, 717-18 (E.D. Mich. 2024) (citing *15192 Thirteen Mile Road, Inc. v. City of Warren*, 626 F. Supp. 803, 823 (E.D. Mich. 1985); *MS Rentals*, 362 F. Supp. 3d at 413; *Halpern*, 404 F. Supp. 3d at 1119).

Landon fails to state a takings claim under the Fifth Amendment.

### 3. Procedural Due Process

Landon alleges that the City "operates with no due process afforded to landlords." (ECF No. 1 at PageID. 31 ¶ 136.) A procedural due process claim is examined under a two-part analysis. *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001). "First, the Court must determine whether the interest at stake is a protected liberty or property interest under the Fourteenth Amendment." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). "Only after identifying such a right do[es the Court] continue to consider whether the deprivation of that interest

contravened the notions of due process." *Id*. (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972); *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Ferencz v. Hairston*, 119 F.3d 1244, 1247 (6th Cir. 1997); *Tony L. v. Childers*, 71 F.3d 1182 (6th Cir. 1995)).

Property interests are not created by the Constitution; "nor may individuals manufacture a property interest." *Wojcik*, 257 F.3d at 609. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 409 (6th Cir. 2002) (quoting *Roth*, 408 U.S. at 577). "[P]roperty interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Wojcik*, 257 F.3d at 609 (quoting *Parratt v. Taylor*, 451 U.S. 527, 529 n.1 (1981)). "[A] protectible property right exists only if a plaintiff has a legitimate claim of entitlement or a justifiable expectation [in the plaintiff's planned use of the property]." *Ziss Bros. Constr. Co. v. City of Independence*, 439 F. App'x 467, 471 (6th Cir. 2011) (quoting *Andreano v. City of Westlake*, 136 F. App'x 865, 871 (6th Cir. 2005)). Landon fails to identify a protectible property right in his Complaint.

15

Landon seems to claim that he has a protected right to use his property as a rental property without complying with the City's ordinances and without being subject to civil infractions and fees for failing to do so. (*See* ECF No. 1 at PageID. 31-33.) But this is only Landon's unilateral expectation. No independent source confers an unfettered right on Landon to use his properties as rental properties without oversight by the City. In fact, as discussed above, "it is beyond all dispute that local municipalities are empowered to regulate land use in order to maintain or improve the quality of life within their communities." *15192 Thirteen Mile Road*, 626 F. Supp. at 823 (citing *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926); *Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974); *Moore v. City of East Cleveland*, 431 U.S. 494 (1977)); *Halpern 2012*, 404 F. Supp. 3d at 1119; *MS Rentals*, 362 F. Supp. 3d at 413.

For these reasons, Landon's procedural due process claim must be dismissed.

### C. Tortious Interference

Landon asserts that Defendants have interfered with his contractual and business relationships with his tenants. (*See* ECF No. 1 at PageID. 25 ¶ 102.) He specifically refers to the denial of water to a tenant at 119 E. Tobias and the tagging of the property at 3622 Western Road "demanding a court appearance or admission

16

of responsibility for disallowing a warrantless inspection." (*Id*. at PageID. 25-26 ¶ 102.)

"Under Michigan law, a tortious interference claim 'requires proof of (1) a valid business relationship or expectancy; (2) knowledge of that relationship or expectancy on the part of the defendant; (3) an intentional interference by the defendant inducing or causing a breach or termination of that relationship; and (4) resulting damage to the plaintiff.'" *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) (quoting *Warrior Sports, Inc. v. Nat'l Collegiate Athletics Ass'n*, 623 F.3d 281, 286 (6th Cir. 2010)). The Sixth Circuit has advised that "[t]he third element requires more than just purposeful or knowing behavior on the part of the defendant." *Id*. (quoting *Wausau Underwriters Ins. Co. v. Vulcan Dev., Inc.*, 323 F.3d 396, 404 (6th Cir. 2003)). "Instead, 'the interference . . . must be improper in addition to being intentional.'" *Id*. (quoting *Volunteer Energy Servs., Inc. v. OptionEnergy, LLC*, 579 F. App'x 319, 326 (6th Cir. 2014)).

The City's public records reflect that water was turned off at 119 E. Tobias only one time, and this was due to a substantial--over three thousand dollar—payment delinquency.[4] (*See* ECF No. 19-6.) The exhibits to Landon's Complaint

---

[4] Landon asserts throughout his filings that the City is refusing to provide water to his properties, although his allegations reflect that his complaint is the City's

17

reflect that 3622 Western Road was tagged for "Failure to Register Rental." (ECF No. 1 at PageID. 59.) This conduct was not improper. *See* Mich. Comp. Laws § 123.166 (authorizing municipalities to discontinue water service for non-payment); *Halpern 2012*, 404 F. Supp. 3d at 1119 ("It is beyond all dispute that local municipalities are empowered to regulate land use in order to maintain or improve the quality of life within their communities.").

Landon's tortious interference claim is therefore subject to dismissal. Moreover, Defendants are entitled to immunity under Michigan's GTLA with respect to this claim. As to the City, Landon has not "plead[] in avoidance of governmental immunity by stating a claim that fits within a statutory exception[.]" *Peterson v. Heymes*, 931 F.3d 546, 558 (6th Cir. 2019) (quoting *Mack v. City of Detroit*, 649 N.W.2d 47, 55-57 (Mich. 2002)); *see also* Mich. Comp. Laws § 691.1407(1). As to the individual defendants, Landon does not plead conduct amounting to "gross negligence" or an "intentional tort." *Peterson*, 931 F.3d at 557 (citations omitted).

---

refusal to put water services in his tenants' names. The City's ordinances do not allow for water services to be in a tenant's name unless the property is properly registered. (*See* ECF No. 16-3 at PageID. 219 (F.C.O. § 46-48(b)).) Landon does not challenge this ordinance or establish that it is unlawful.

## IV. Conclusion

For the reasons stated, Landon fails to state viable claims against Defendants. He therefore is not entitled to a preliminary injunction.

Accordingly,

**IT IS ORDERED** that Landon's motion for preliminary injunction (ECF No. 11) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss (ECF No. 19) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 19, 2025

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 19, 2025, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager